[No. 12401–3–I.   Division One.   June 18, 1984.]

THE STATE OF WASHINGTON, *Respondent,* v. EDWARD
LEE MATHEWS, *Appellant.*

*Raymond H. Thoenig* and *Nancy L. Talner* of *Washington Appellate Defender Association,* for appellant.

*Norm Maleng, Prosecuting Attorney,* and *Linda Walton, Deputy,* for respondent.

SCHOLFIELD, J.—Edward Lee Mathews appeals his conviction for first degree robbery, alleging violation of his rights under CrR 3.3 and error in excluding expert testi-

mony.

Mathews was accused of taking a watch and $2 from Knud Hasselbalch on May 4, 1982. On that evening, Seattle police officers, responding to a call, found Hasselbalch lying on the street in the vicinity of Pike Place and Stewart Street. He was bleeding from the neck. He gave police a physical description of his assailant, who he said cut him with a knife and robbed him. Using the description, police arrested Mathews a short time later. He was charged and convicted of first degree robbery.

At trial, Mathews sought to establish a defense of diminished capacity due to intoxication. He offered testimony by a psychologist and a psychiatrist that he suffered from a condition known as "post traumatic stress syndrome" (PTSS) stemming from military service in Vietnam. The evidence offered would have shown that he used alcohol and drugs because of the PTSS. He contended that the testimony was important to his defense because the State presented evidence from which the jury could find that Mathews was not seriously affected by alcohol at the time the crime was committed. He argued that the jury would have a basis for rejecting the State's contention that Mathews fabricated his claim of extreme intoxication if they knew the underlying reason for his excessive use of alcohol. The trial judge ruled that the testimony of the psychiatrist and the psychologist would be limited to a diagnosis of Mathews as a chronic alcoholic and the effects of alcohol upon human behavior, and that they would not be allowed to testify regarding PTSS.

Mathews was brought before the trial judge at 3:20 p.m. on September 20, 1982, the day on which Mathews' waiver of speedy trial expired. At that time, the trial judge announced the name of the case, stated that it had been sent down from the Presiding Department for trial, and asked the parties if they were ready to proceed. There was no objection to proceeding. The court then heard a motion to amend the information, defendant's motion to exclude prior convictions, and a request by Mathews that he be

provided suitable clothing for trial so that he would not have to appear before the jury in jail attire. On the following day, September 21, the jury was empaneled.

Mathews' first contention is that CrR 3.3[1] was violated because he was not "brought to trial" until after the expiration of the permissible speedy trial period. He argues that a defendant is not "brought to trial" until his jury is empaneled and sworn to try the case.

The cases relied upon by Mathews to support his argument that being "brought to trial" occurs when the jury has been empaneled are all cases deciding double jeopardy issues. *See State v. Ridgley,* 70 Wn.2d 555, 424 P.2d 632 (1967); *State v. Jones,* 26 Wn. App. 1, 612 P.2d 404 (1980). The phrase "brought to trial" is not found in Const. art. 1, § 9 or U.S. Const. amend. 5. Both of these "double jeopardy" provisions prohibit putting a person in jeopardy twice for the same offense.

The double jeopardy provisions serve a different purpose than is served by CrR 3.3. The constitutional protection against double jeopardy is designed to prevent the State from subjecting an individual to embarrassment, expense, and ordeal through repeated attempts to convict him for an alleged offense. *Green v. United States,* 355 U.S. 184, 187–88, 2 L. Ed. 2d 199, 78 S. Ct. 221, 61 A.L.R.2d 1119 (1957). On the other hand, a speedy trial

> is necessary to preserve the means of proving the charge, to maximize the deterrent effect of prosecution and conviction, and to avoid, in some cases, an extended period of pretrial freedom by the defendant during which time he may flee, commit other crimes, or intimidate witnesses.

*State v. Goldthorpe,* 14 Wn. App. 268, 270–71, 540 P.2d 455 (1975) (quoting *ABA Standards Relating to Speedy Trial,* Commentary at 10 (Approved Draft, 1968)). We perceive no reason why judicial interpretations of "jeopardy"

---

[1]The language of the rule relied upon by Mathews for this argument is:

"A defendant not released from jail pending trial shall be brought to trial not later than 60 days after the date of arraignment." CrR 3.3(c)(1), in part.

should be controlling in defining what is meant in CrR 3.3 by the phrase "brought to trial".

Starting the trial satisfies the purpose of a rule designed to secure a speedy trial. Hearing and disposition of preliminary motions by the trial judge after a case is assigned or called for trial is a customary and practical phase of a trial. An obvious flaw in Mathews' reasoning is demonstrated by the fact that completing the empaneling of a jury can sometimes take 2 or 3 weeks. If empaneling a jury had to be accomplished within the 60 days allowed to bring to trial a defendant in custody, then, as a practical matter, many trials would have to commence within 40 or 45 days of the arraignment in order to be safely within the 60–day requirement of CrR 3.3. Nothing in the language of CrR 3.3 or the cases construing it suggests that any such interpretation was ever intended. We conclude that Mathews was brought to trial in time to satisfy CrR 3.3.

Mathews also contends the court erred in not allowing him to present testimony from a psychiatrist and a psychologist that he was suffering from posttraumatic stress syndrome and had turned to the use of alcohol and drugs "to mask or to compensate for his fear and guilt." Mathews argues such evidence was relevant to his defense of diminished capacity, which was based on a claim that excessive consumption of alcohol caused an alcoholic blackout during the time the crime was committed. This argument thus raises a question of whether the trial judge abused his discretion under ER 104, 403, and 702.[2]

---

[2]ER 104 provides, in part:

"Preliminary questions concerning the qualification of a person to be a witness, the existence of a privilege, or the admissibility of evidence shall be determined by the court, subject to the provisions of section (b). In making its determination it is not bound by the rules of evidence except those with respect to privileges."

ER 403 provides:

"Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence."

The trial court gave instruction 11 on diminished capacity, as follows:

> No act committed by a person while in a state of voluntary intoxication is less criminal by reason of that condition, but whenever the actual existence of any particular mental state is a necessary element to constitute a particular kind or degree of crime, the fact of intoxication may be taken into consideration in determining such mental state.

Robbery requires a specific intent to commit theft of the property taken. We have carefully reviewed the record of the arguments to the court on this issue and proceed on the assumption (although the record is unclear on the point) that the trial court treated the statement of defense counsel as to what the witnesses would testify to as an acceptable offer of proof.

The trial judge ruled the testimony regarding PTSS was irrelevant to the ability to form the specific intent. ER 401 defines relevant evidence as:

> "Relevant evidence" means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence.

■ It is apparent from the record that Mathews does not contend that the posttraumatic stress syndrome was itself relevant to the issue of diminished capacity to form a specific intent. Evidence of PTSS arguably made it more or less probable that Mathews was using alcohol at times relevant to the charged robbery; it would have had no relevance to the issue of the degree of intoxication.

It appears to us that the chronic alcoholism was the critical diagnosis. Background causes for the alcoholism were secondary and insignificant. Moreover, the fact that he was probably using alcohol at times relevant to the offense is

---

ER 702 provides:

"If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise."

only marginally relevant, at best. The real issue was whether he was so intoxicated he did not have the capacity to form an intent to steal.

Mathews cites *State v. Edmon,* 28 Wn. App. 98, 621 P.2d 1310, *review denied,* 95 Wn.2d 1019 (1981) as authority requiring admission of the experts' PTSS testimony. *Edmon* held that it was error to exclude psychiatric evidence of depression and anxiety on the issue of ability to form specific intent. In that case, however, the evidence of mental disorder was sought to prove directly the inability to form intent. Here, the PTSS evidence was sought not for the purpose of showing inability to form intent, but rather to show that at the time of the crime Mathews was intoxicated and, therefore, could not form the specific intent required for robbery. Under criteria set out in *Edmon,* the opinion evidence was inadmissible because PTSS was not causally related to a lack of specific intent. *State v. Edmon, supra* at 103.

Exclusion of the opinion evidence offered did not prejudice Mathews' defense. Both the psychiatrist and the psychologist testified that Mathews was a chronic alcoholic. A diagnosis of chronic alcoholism was the critical diagnosis and the most persuasive reason he would likely be using alcohol at times relevant to the charged offense.

Furthermore, Dr. Petrich, the psychiatrist, testified:

> Well, my diagnosis was that given his history that he gave me, that it was consistent with chronic alcoholism and alcoholic blackout and if this is in fact the case, an individual suffering from the alcoholic blackout is deprived of the rational and moral sense to contemplate their actions and form specific intent as evaluated by the law.

Dr. Petrich was asked if Mathews' history was consistent with any other psychiatric disorder. He answered that it was. He was then asked if the other psychiatric disorder had any relationship to his chronic alcoholism and he replied:

> In this particular case, I would say yes. I wouldn't say—

What I mean to say, yes, it's common and very probable.

Dr. Petrich went on to testify to the effects of alcohol on human behavior. The psychologist, Dr. Emmet M. Early, testified that he examined Mr. Mathews and was asked if he formed an opinion as to whether or not Mathews was capable of forming an intent to commit a crime on May 4, 1982. Dr. Early responded:

> I do not believe he was able to form an intent to commit the crime based on the information you gave me.

He went on to say that the reason for that opinion was related to his use of alcohol and that Mathews was a chronic alcohol user.

Mathews testified in his own defense and advised the jury that he started drinking regularly while serving in the armed forces in Vietnam, that he drank heavily and continually after his return from Vietnam, that he related his drinking to his Vietnam experiences, and that on the day of the robbery he had been drinking alcoholic beverages from the time he awakened in the morning.

From this record, it is apparent the jury was presented with essentially the same information that Mathews offered through the testimony of Dr. Petrich and Dr. Early. He had informed the jury that he was a Vietnam veteran, that he started drinking and using drugs in Vietnam and became a heavy drinker after his return to the United States. He had been diagnosed as a chronic alcoholic by a psychiatrist and a psychologist who testified that his drinking was related to other psychological disorders and that he was drinking on the day of the alleged offense. Expert testimony that he was suffering from PTSS would have added nothing significant to the volume of evidence before the jury when it rejected his defense of diminished capacity.

■ The trial court has broad discretion under ER 104, 403, and 702 in respect to the admission of evidence and, particularly, expert testimony. We find ample justification for the trial judge's ruling in respect to the rejected expert testimony and therefore no abuse of discretion. *State v.*

*Huelett,* 92 Wn.2d 967, 603 P.2d 1258 (1979); *State ex rel. Carroll v. Junker,* 79 Wn.2d 12, 482 P.2d 775 (1971).
Judgment affirmed.

SWANSON and ANDERSEN, JJ., concur.

Review denied by Supreme Court October 5, 1984.