[Nos. 19260–4–I; 19521–2–I.   Division One.   May 31, 1988.]

THE STATE OF WASHINGTON, *Respondent,* v. DAVID IRWIN REDD, *Defendant,* ALBERT EARL BLACKSHEAR, *Appellant.*

THE STATE OF WASHINGTON, *Respondent,* v. DAVID IRWIN REDD, *Appellant.*

*Rita Griffith* of *Washington Appellate Defender Association,* for appellant Blackshear.

*Edward E. Gibson,* for appellant Redd.

*Norm Maleng, Prosecuting Attorney,* and *Craig Peterson, Deputy,* for respondent.

SCHOLFIELD, C.J.—David Irwin Redd and Albert Earl Blackshear appeal their convictions for possession of controlled substances with intent to deliver or manufacture.

## FACTS

Blackshear and Redd were charged together with one count of possession of cocaine and heroin with intent to deliver or manufacture (count 1). Blackshear was charged separately with two additional counts of possession of cocaine with intent to deliver or manufacture (counts 2 and 3). Redd was also charged separately with one count of simple possession of cocaine (count 4).

On June 3, 1986, the case was assigned to trial before the Honorable Richard Ishikawa, 1 day before Redd's speedy trial period expired. During that day and the subsequent day, pretrial motions were conducted. In that period, the trial court granted the defendants' joint motion for discovery regarding the reliability of the State's confidential informants. On June 5, 1986, the State requested a stay of proceedings to enable it to take an interlocutory appeal of the trial court's discovery decision. The next day, the Court of Appeals granted the stay.

The Court of Appeals decided in favor of the State, and remanded the case for continuance of the trial. The stay was dissolved upon issuance of the mandate. *State v. Blackshear,* 44 Wn. App. 587, 723 P.2d 15 (1986). The mandate was issued on August 7, 1986, and filed in the superior court on August 8, 1986. An amended mandate was issued on August 18, 1986, and filed in the superior court on August 20, 1986. The trial was recommenced on August 11, 1986, with pretrial motions.

During the pretrial motions period, Redd and Blackshear moved to dismiss for violation of their speedy trial rights. The trial court denied their motion. Blackshear and Redd also moved to sever counts, and Redd moved to sever defendants as well. These motions were also denied. Both defendants moved to disclose the identity of the State's confidential informant at an in camera hearing. The motion was denied.

During voir dire, defense counsel began to question a prospective juror about inferences to be drawn from the failure of a defendant to testify. The trial court interrupted, noting that the subject was probably one which should have been covered by the trial court's general remarks. The trial court instructed the jurors as follows:

> In the course of events, for example in a civil case, if someone didn't testify, you would be allowed to indulge in an inference against them that there must have been something about this that suggests other facts or they would have testified.
>
> You cannot do that in a criminal case.
>
> In a criminal case anyone who is charged with a crime has an absolute right, constitutional right, not to give evidence against themselves.
>
> And, in the event where that right is exercised in a given case, the Court then gives an instruction that the jury must follow which says that they may not use the fact that the individual has not testified against them in determining the facts in the case. . . .

Defense counsel later objected to the court's general instruction, and moved for a mistrial claiming the general instruction was prejudicial. The trial court denied the motion.

The State's evidence was presented as follows: The charges arose from the execution of several search warrants at the same address, 832 – 28th Avenue South, in Seattle.

Count 1 arose from the execution of a search warrant on February 26, 1985. The police forced open the back door, and upon entering the house, found Redd standing in the dining room area. On the floor beneath him and on the

dining room table were many glassine bags containing an off–white colored rock, $65 in United States currency, a brown vinyl shaving bag containing $387 in United States currency, a steno notebook, and many small square tags with number designations on them. Redd at first stated that 832 – 28th Avenue South was his address, and then later denied it. The state crime lab's analysis of the contents of the glassine bags determined that they contained cocaine.

During that same search, Blackshear and a woman named LaDonna Fair were discovered in a back bedroom. The room contained, among other things, a small glass jar containing a white rock–like object, a canister containing brownish–colored powder, a .33 caliber Smith & Wesson revolver, a prescription bottle, a canister top with a wire mesh screen, and a scale. The brownish–colored powder was analyzed and found to contain heroin.

Count 2 concerned a search warrant executed on April 12, 1985. The door was again forced open, and the police observed Blackshear standing in the living room/dining room area. The area near Blackshear contained 105 glassine bags, a baggie containing white paper bindles, papers with numerical designations on them, a shaving bag, a paper bag and a razor blade. Analysis indicated that the glassine bags contained cocaine.

Regarding count 3, a third search warrant was executed on the evening of August 15, 1985. The back door was again forced open. The house was in total darkness, and the officers noticed a flickering light, and then the house began to fill with smoke. The officers observed Blackshear standing near the bathroom door. Inside the bathtub was a 5–gallon can with flames shooting up from it about 3 feet, and next to the bathtub was an open gasoline can. Once the fire was extinguished, the police observed that the can contained small cellophane envelopes, some of them containing small bits of white rock or melted white rock residue. Six unwrapped white rocks were also found near the bathtub. Two of the six were analyzed and found to contain cocaine.

In the living room area, the police found a syringe, more cellophane envelopes, and a paper sack containing United States currency.

Regarding count 4, the police also executed a search warrant on October 9, 1985. As before, the door was forced open, and when the police entered, they observed Redd standing just inside the door, holding his head. There were several other people at the house this time, including one couple in a bedroom in which suspected heroin was recovered. Another male, later determined to be Leo White, ran toward the bathroom area. He was pursued and subdued by one of the officers, who observed a wad of bills in the man's hand, and concealed inside the wad of bills were drugs.

At the end of the State's case, both defendants renewed their motions to sever. Neither defendant presented evidence on his behalf. Blackshear was convicted on all three counts against him. The jury found Redd guilty on count 1, but not guilty on count 4. This appeal timely followed.

## SEVERANCE

A ruling denying a motion to sever criminal charges is within the discretion of the trial court and will be affirmed absent an abuse of discretion. *State v. Thompson*, 88 Wn.2d 518, 525, 564 P.2d 315 (1977). CrR 4.3(a) permits joinder of offenses as follows:

> Two or more offenses may be joined in one charge, with each offense stated in a separate count, when the offenses, whether felonies or misdemeanors or both:
>
> (1) Are of the same or similar character, even if not part of a single scheme or plan; or
>
> (2) Are based on the same conduct or on a series of acts connected together or constituting parts of a single scheme or plan.

CrR 4.3(b) permits joinder of defendants as follows:

> Two or more defendants may be joined in the same charge:
>
> . . .
>
> (3) When, even if conspiracy is not charged and all of the defendants are not charged in each count, it is alleged that the several offenses charged:

(i) were part of a common scheme or plan; or

(ii) were so closely connected in respect to time, place and occasion that it would be difficult to separate proof of one charge from proof of the others.

CrR 4.4(a)(2) and (b) read as follows:

**(a) Timeliness of Motion—Waiver.**

. . .

(2) If a defendant's pretrial motion for severance was overruled he may renew the motion on the same ground before or at the close of all the evidence. Severance is waived by failure to renew the motion.

**(b) Severance of Offenses.** The court, on application of the prosecuting attorney, or on application of the defendant other than under section (a), shall grant a severance of offenses whenever before trial or during trial with consent of the defendant, the court determines that severance will promote a fair determination of the defendant's guilt or innocence of each offense.

Joinder of offenses arising out of acts connected together will generally be upheld, unless the use of a single trial will embarrass or confound the defendant in presenting separate defenses, or the defendant will be erroneously prejudiced by the cumulative effect of the evidence. *See State v. Smith,* 74 Wn.2d 744, 446 P.2d 571 (1968), *vacated in part,* 408 U.S. 934 (1972). Prejudice may also come from a feeling of hostility on the part of the jury, created by the charging of several crimes as distinct from only one. *See Drew v. United States,* 331 F.2d 85 (D.C. Cir. 1964). An abuse of trial court discretion occurs when it refuses to sever offenses after the defendant demonstrates that joinder creates prejudice against him, despite curative instructions.

In *State v. Gatalski,* 40 Wn. App. 601, 699 P.2d 804, *review denied,* 104 Wn.2d 1019 (1985), the Court of Appeals noted that the defendant has the burden of proving an abuse of discretion in appealing a denial of severance. The factors to be considered in deciding severance issues can be summarized as follows:

(1) the strength of the State's evidence on each count, (2) the clarity of defenses to each count, (3) whether the

court properly instructed the jury to consider the evidence of each crime, and (4) the admissibility of the evidence of the other crimes, even if they had been tried separately or never charged or joined.

*Gatalski,* at 607.

An analysis of the factors presented in *Gatalski* militates against a finding of prejudice in the case before us. With respect to counts 1, 2, and 3 (count 4 resulted in a not guilty verdict and is not before this court), the State's case was extremely strong. Both defendants were caught by the police in possession of controlled substances, along with other items strongly suggesting an intent to distribute or manufacture. Because no particular defenses were presented, the question of the clarity of defenses is not at issue here. As for whether the court properly instructed the jury to consider the evidence of each crime, the court's instruction 7 stated as follows:

A separate crime is charged against one or more of the defendants in each count. The charges have been joined for trial. You must decide the case of each defendant on each crime charged against that defendant separately as if it were a separate trial. Your verdict on any count as to any defendant should not control your verdict on any other count or as to any defendant.

Neither defendant on appeal suggests that the trial court's instruction was improper.

The last issue to be considered in determining whether a request for severance was properly denied concerns the admissibility of the evidence of the separate counts at separate trials under ER 404(b). ER 404(b) delineates the circumstances under which other crimes, wrongs, or acts may be admissible:

Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.

In *State v. Saltarelli,* 98 Wn.2d 358, 655 P.2d 697 (1982), the Washington Supreme Court stated that the trial court must first consider the relevance of other acts by deciding whether the evidence makes the existence of any fact that is of consequence to the determination of the action more or less probable. If the evidence is relevant, then probative value must be balanced against prejudicial effect. *Saltarelli,* at 361.

We find that evidence obtained from the execution of each search warrant was admissible in each count under ER 404(b) to show intent. Both defendants were charged with possession of controlled substances *with intent to deliver or manufacture,* and the evidence of an ongoing business in which both defendants were involved was probative on the issue of intent. The amount of cocaine or heroin contained in small bags suitable for retail distribution, information tags, paraphernalia for measuring and packaging drugs, and the substantial amounts of cash that were typically present all point to an ongoing drug distribution operation. Intent was also shown through the increased fortifications occurring on each subsequent search. As an ongoing business, the organization appears to have merely increased its security precautions, instead of ceasing its illegal activities. In balancing probative value against prejudicial effect, we find that the evidence of the other crimes was highly probative, and that while all evidence of a defendant's wrongdoing is prejudicial, the prejudice here did not overcome the probative value of the evidence.

Thus, because the factors listed in *Gatalski* are satisfied here, we hold that the trial court did not abuse its discretion in denying the defendants' motion to sever.

### CONFIDENTIAL INFORMANT

Both defendants argue that since the confidential informant did not identify them as dealers present in the house when the informant was present and observed drug–selling activity, there is a reasonable possibility the informant

could give testimony supporting the defense that Black-shear and Redd were only customers and were not dealers.

The trial court declined defendants' request for an in camera hearing relating to the information possessed by the informant. This raises the issue of whether a sufficient showing was made by defendants to require an in camera hearing.

In *Roviaro v. United States,* 353 U.S. 53, 60–61, 1 L. Ed. 2d 639, 77 S. Ct. 623 (1957), the Supreme Court recognized the importance of keeping the information and identity of informants confidential, but held that if disclosure of an informant's identity "is relevant and helpful to the defense . . . or is essential to a fair determination of a cause, the [State's] privilege must give way."

In *State v. Casal,* 103 Wn.2d 812, 816, 699 P.2d 1234 (1985), our Supreme Court stated that

> the privilege must yield to the defendant's need to know the informant's identity in cases *where the informant is a material witness on the question of a defendant's guilt or innocence.*

The issue of whether an in camera hearing should be held is one lying within the discretion of the trial court. *State v. Uhthoff,* 45 Wn. App. 261, 268, 724 P.2d 1103 (1986).

The factual showing made in this case does not meet the threshold requirement that the defendant show some reliable basis upon which a trial court could conclude that an in camera hearing would likely disclose evidence relevant and helpful to the defense or essential to a fair determination of the case.

The defendants' argument is premised on the fact that the informant was not present in the house at the same time either of the defendants was present. Thus, it is obvious that to assume the informant's testimony could support the defense that defendants were only customers and not dealers is pure speculation. Since the informant and defendants were not in the house at the same time, any relevant testimony would appear to involve hearsay and be inadmissible for that reason. In this factual setting, the

trial court did not abuse its discretion in denying defendants' motions for an in camera hearing involving the informant.

## Voir Dire

The fifth amendment to the United States Constitution states that: "No person . . . shall be compelled in any criminal case to be a witness against himself . . ." In addition, article 1, section 9 of the Washington State Constitution states that: "No person shall be compelled in any criminal case to give evidence against himself . . ."

Once a criminal defendant has been advised of his right to remain silent, his ensuing silence might merely be an exercise of that right. Calling attention to that silence, and suggesting that an unfavorable inference be drawn, violates due process. *See Doyle v. Ohio,* 426 U.S. 610, 49 L. Ed. 2d 91, 96 S. Ct. 2240 (1976); *State v. Fricks,* 91 Wn.2d 391, 588 P.2d 1328 (1979).

With respect to judicial comments at trials, article 4, section 16 of the Washington State Constitution states that: "Judges shall not charge juries with respect to matters of fact, nor comment thereon, but shall declare the law." However, only those judicial comments that either expressly or impliedly convey to the jury the personal opinion of the trial judge regarding the credibility, weight, or sufficiency of evidence produced at trial are forbidden. *State v. Jacobsen,* 78 Wn.2d 491, 477 P.2d 1 (1970).

An examination of the entire comment made by the trial court shows that the jurors were told that unlike a jury in a civil case, they could draw no inference from a defendant's silence, because of the defendant's constitutional right to remain silent. The trial court further stated that the jurors could not use the defendants' failure to testify in determining the facts of the case.

In addition, the jurors were given the court's instruction 4, that: "The fact that the defendant has not testified must not be considered by you in arriving at your verdict." (This

instruction is identical to WPIC 6.31.) None of these statements reveal the trial court's personal attitude, and they are accurate statements of the law.

The defendants are concerned that one or more jurors would draw the inference from the court's oral instruction that they did not testify in order to avoid giving testimony damaging to them. While such an interpretation is conceivable, it would be a very strained interpretation and would be contrary to the meaning obviously intended by the court. In any event, instruction 4 correctly stated the law.

Therefore, we hold that the trial court did not err in its *comments* to the jurors on this issue during void dire.

## SPEEDY TRIAL

CrR 3.3(c)(1) states in pertinent part:

A defendant not released from jail pending trial shall be brought to trial not later than 60 days after the date of arraignment.

As noted above, pretrial motions were initially begun in this case on Redd's 59th day. In *State v. Mathews*, 38 Wn. App. 180, 685 P.2d 605 (1984), this court stated the rule that under CrR 3.3, a defendant is brought to trial when the case is called for trial and the trial judge in the case hears and decides preliminary motions. Under the *Mathews* rule, Redd was properly brought to trial on the 59th day. However, he argues that *Mathews* stands for the proposition that only pretrial motions that are customarily made satisfy CrR 3.3's requirements, and that because the motion before Judge Ishikawa was unusual, *Mathews* does not apply. There is no basis for such a narrow construction of *Mathews* and we reject it.

In addition, the trial was not completed at that time because of the State's interlocutory appeal. Upon acceptance of the case for discretionary review, the Court of Appeals stayed the proceedings below. CrR 3.3(g) states in pertinent part:

The following periods shall be excluded in computing the time for arraignment and the time for trial:

. . .

(5) Delay resulting from a stay granted by an appellate court;

Redd argues that the stay was improperly granted, because the State has no right to appeal an order which does not abate, discontinue or determine the case. *See* RAP 2.2(b)(1). He argues that the only basis for allowing the States' appeal was the deputy prosecutor's allegedly untruthful statement that the State would dismiss rather than reveal its confidential source.

Redd's claim that the deputy prosecutor lied about the State's intentions to dismiss need not be considered here, because Redd's reliance on RAP 2.2 is misplaced. RAP 2.2 deals with situations in which the government may *appeal* a trial court decision. An appeal was not taken in this case. Instead, the State moved for discretionary review under RAP 2.3. This rule states:

(a) **Decision of Superior Court.** Unless otherwise prohibited by statute or court rule, a party may seek discretionary review of any act of the superior court not appealable as a matter of right.

This court explicitly stated that discretionary review was accepted under RAP 2.3. *State v. Blackshear,* 44 Wn. App. 587, 723 P.2d 15 (1986). This rule does not require the State to make a showing that the trial court's order would end the case before review is appropriate.

Redd also argues that the State's willful misuse of the appeal process compromised his speedy trial rights. *See Barker v. Wingo,* 407 U.S. 514, 33 L. Ed. 2d 101, 92 S. Ct. 2182 (1972). However, we find no error here. The State had the right to petition the Court of Appeals for discretionary review. In fact, Redd concedes that this court's decision reversing the trial court's order was tantamount to a finding that review was proper. Therefore, Redd's argument is without merit.

## BLACKSHEAR'S OFFENDER SCORE

Blackshear was sentenced under the Sentencing Reform Act of 1981 (SRA), RCW 9.94A. He filed a motion requesting accelerated review, pursuant to RAP 18.15, alleging that the trial court erred in calculating his offender score with respect to other current offenses. Consideration of Blackshear's motion was stayed pending resolution of a case being considered in the Washington Supreme Court. After the filing of *State v. Jones,* 110 Wn.2d 74, 750 P.2d 620 (1988), the State filed a motion on the merits in this court on the sentencing issue. The motion on the merits was referred by commissioner's order to the panel considering the remainder of the issues on appeal.

Blackshear presents two arguments concerning the calculation of his offender score. First, Blackshear notes that former RCW 9.94A.360(11) required that all adult convictions served concurrently should be counted as one offense when calculating a defendant's offender score. He argues that this portion of the statute should also apply to his other current convictions (the other two current counts) because they would be served concurrently under the SRA.

Blackshear's second argument is that the trial court erred in assigning a score of 2 to each of his other current offenses in calculating his offender score. Blackshear contends that such "double counting" under former RCW 9.94A.360(8) applies only to prior drug convictions, and not to other current drug convictions.

The Washington Supreme Court answered Blackshear's first contention in its recent opinion in *State v. Jones, supra.* As the *Jones* court noted, former RCW 9.94A-.400(1)(a) read in pertinent part as follows:

> [W]henever a person is convicted of two or more offenses, the sentence range for each offense shall be determined by using all other current and prior convictions as criminal history. All sentences so determined shall be served concurrently.

The *Jones* court acknowledged that the SRA itself gives no guidance as to how current convictions should be scored.

However, the *Jones* court noted that in his book, *Sentencing in Washington* (1985), David Boerner interpreted the SRA's silence as an indication that other current convictions should be scored as if they were prior convictions. *Jones,* at 81.

In addition, the Legislature amended RCW 9.94A.400-(1)(a) in 1986 to read in pertinent part as follows:

> [W]henever a person is to be sentenced for two or more current offenses, the sentence range for each current offense shall be determined *by using all other current and prior convictions as if they were prior convictions* for the purpose of the offender score . . .

(Italics ours.) This amendment is applicable to crimes committed after July 1, 1986. However, the *Jones* court held that because the amendment was a clarifying amendment, it should be applied retroactively to crimes committed before July 1, 1986. *Jones,* at 82.

Jones argued, as does Blackshear, that under former RCW 9.94A.360(11), concurrently served prior convictions count only as one offense in calculating the offender score, and that other current offenses that will be served concurrently should be treated in the same way. However, the court rejected Jones' argument. Examining the policy considerations behind former RCW 9.94A.360(11), the *Jones* court noted that the only reason for treating concurrently served prior convictions as only one offense was to avoid the unfairness of pre–SRA sentencing decisions.

Under the former system, the same criminal conduct could result in one conviction or several convictions served either concurrently or consecutively, depending upon plea bargaining policies and sentencing practices. The *Jones* court determined that the reasons for treating concurrently served convictions as one offense were, therefore, inapplicable to other current offenses. *Jones,* at 84.

Thus, under *Jones,* Blackshear's first argument that his two other current offenses should only be counted as one offense is without merit. Blackshear's second argument

concerning the weight assigned to each current drug conviction must also be rejected.

■ Former RCW 9.94A.360(8) sets forth the proper scoring of drug offenses as follows:

> If the present conviction is for a violation of chapter 69.50 RCW, except for possession of a controlled substance (RCW 69.50.401(d)), count two points for each adult prior felony drug conviction (chapter 69.50 RCW, except RCW 69.50.401(d)), and one point for each juvenile drug conviction. All other adult and juvenile felonies are scored as in subsection (5) of this section if the current drug conviction is violent, or as in subsection (9) of this section if the current drug conviction is nonviolent.

All three counts at issue here were charged under RCW 69.50.401(a) and were accorded a seriousness level of 6.

The trial court characterized Blackshear's other current drug convictions as adult prior felony drug convictions, and thus accorded each of them a score of 2. Blackshear's prior theft in the second degree conviction, under either former RCW 9.94A.360(5) or (9) was accorded a score of 1. Thus, Blackshear's offender score was calculated to be 5. The standard range for a level 6 crime with an offender score of 5 is 36 to 48 months, and Blackshear was sentenced within the standard range.

Blackshear contends that only *prior* drug convictions should be doubled. In support of his contention, Blackshear cites the 1986 amendment to RCW 9.94A.360, which defines a prior conviction:

> (1) A prior conviction is a conviction which exists before the date of sentencing for the offense for which the offender score is being computed. Convictions entered or sentenced on the same date as the conviction for which the offender score is being computed shall be deemed "other current offenses" within the meaning of RCW 9.94A.400.

If RCW 9.94A.360 as amended is read in isolation, Blackshear's argument that the doubling of drug offenses only applies to prior drug convictions seems plausible.

However, as noted above, RCW 9.94A.400 as amended specifically states that for purposes of the offender score, other current convictions should be treated "as if they were prior convictions." Because the definition of prior convictions contained in RCW 9.94A.360(1) specifically refers to RCW 9.94A.400, we reach the inescapable conclusion that RCW 9.94A.400 is controlling here.

Thus, the trial court correctly treated Blackshear's other current drug convictions as prior drug convictions, and assigned each of them a score of 2. We hold that Blackshear's offender score was correctly calculated.

Judgment affirmed.

WILLIAMS and COLEMAN, JJ., concur.

Review denied by Supreme Court September 1, 1988.