[No. 37343-9-I. Division One. September 16, 1996.]

THE STATE OF WASHINGTON, *Appellant*, v. KEVIN ALLEN RAMOS, *Respondent*.

624

*Norm Maleng, Prosecuting Attorney*, and *Catherine D. Shaffer, Deputy*, for appellant.
*Michael Danko*, for respondent.

KENNEDY, A.C.J. — The State appeals the trial court's orders permitting withdrawal and substitution of defense counsel, denying its motion for reconsideration, and dismissing the Violation of the Uniform Controlled Substances Act (VUCSA) charge against Kevin Ramos under CrR 4.7 and 8.3(b). The State contends that because there was no actual conflict of interest, the trial court erred in permitting the withdrawal and substitution of defense counsel. The State also contends that the trial court abused its discretion in dismissing the charge because the prosecutors committed neither discovery violations nor mismanagement, and the record fails to reflect any prejudice to Ramos. We agree with the State's position on both issues and reverse and remand for reinstatement of the VUCSA charge.

## FACTS

On July 7, 1995, Kevin Ramos and Tina Holdman, also

known as Tina Holden, were charged with Violation of the Uniform Controlled Substances Act for delivering cocaine within 1000 feet of a school. An omnibus hearing was set for August 25, 1995, with trial to begin on September 6, 1995. The speedy trial expiration date was September 18, 1995.

At the omnibus hearing on August 25, 1995, the State learned that Holdman was considering entering a guilty plea to the VUCSA charge. On September 5, 1995, counsel for Holdman indicated that Holdman was willing to testify for the State against Ramos. On the morning of trial, September 6, 1995, Holdman pleaded guilty to the VUCSA charge and entered into a plea agreement in which she promised to testify for the State at Ramos's trial. Immediately following the entry of Holdman's guilty plea, the deputy prosecutor contacted Ramos's counsel to notify him of the plea and of Holdman's agreement to testify for the State. Later that same day, prior to jury selection, the special prosecutor again informed Ramos's counsel that Holdman would be a witness for State, and showed him the original plea agreement and sentencing materials filed in her case. The special prosecutor provided Ramos's counsel with copies of the plea agreement the next morning.

Before September 6, 1995, both parties believed that Holdman's true surname was Holden, and that Holdman was an alias. The two names appeared, at times simultaneously and at times alternatively, on documents produced throughout discovery. For example, the incident report and police statements submitted to the defense on July 7, 1995, set forth Holdman's name as Tina Holdman, but indicated that at the precinct the officers had discovered that her true name was Tina Holden. The document entitled "For Determination of Conflicts," also provided on July 7, 1995, identified Holdman as "Tina Marie Holden." Although the conflicts document listed Holdman's

date of birth as April 2, 1972, her true date of birth is April 27, 1972, as reflected in some of the police reports.[1]

Both the regular and the special deputy prosecutors assigned to Ramos's case testified that the State first learned that Holdman's true name was Holdman rather than Holden when she entered her guilty plea on September 6, 1995. At that time, Holdman struck "Holden" from the caption of the State's pleading papers and replaced it with "Holdman." Ramos asserts that his trial counsel first learned Holdman's true name when he received a copy of her guilty plea from the State on September 7, 1995.

On the morning of September 7, 1995, Ramos's counsel informed the court that a potential conflict of interest had arisen because the Public Defender Association (PDA), of which he was a member, had previously represented Holdman on a theft charge. Citing the Rules of Professional Conduct (RPC), Ramos's counsel moved for substitution of counsel because his obligation to maintain Holdman's confidences and secrets conflicted with his duty to Ramos to attack her credibility if she testified. The State responded that the claim of conflict was unsupported. Moreover, arguing that the attorney-client privilege belonged to Holdman, the State contended that any conflict would be resolved if Holdman waived her privilege. Although Holdman did, in fact, appear in court with her counsel and waive her attorney-client privilege with full knowledge of her rights, Ramos's counsel argued that her waiver did not resolve the conflict and requested that the court appoint new counsel to advise Ramos on "how to proceed on the conflict of interest issue." Vol. 2 Report of Proceedings, at 11.

---

[1]Court documents filed after Holdman was first charged reflect confusion regarding her name. The July 11, 1995, Notice of Case Scheduling Hearing Date shows the name "Holden" crossed out and "Holdman" inserted in its place. Although counsel's notice of appearance shows the name Holdman, the omnibus hearing order signed by both Holdman and her counsel shows the name Holden. The Court Services sheet lists Holdman's true name as "Tina Marie Holden" with an alias of "Tina Marie Holdman." Holdman was booked into the King County Jail under the name Holden. These are just a few examples of the confusion regarding Holdman's true name.

The trial court ordered that independent counsel be appointed to advise Ramos. The court appointed Michael Danko, who appeared in court and stated that it was his opinion that an actual conflict existed, and who informed the court that Ramos requested substitution of counsel. Noting that neither side was aware of what was going to happen in this particular case, the court found that there was an actual conflict of interest and accordingly granted Ramos's request for substitution of counsel. After Danko expressed his intention to move for a dismissal of the charges against Ramos based on discovery violations by the State, the court appointed Danko as substitute counsel and recessed the trial pending a hearing on the motion to dismiss.

On September 14, 1995, the State moved for reconsideration of the trial court's order permitting withdrawal and substitution of counsel. The State's motion was denied. The court then heard Ramos's motion to dismiss. Ramos argued that the State had mismanaged the case by failing to properly identify Holdman, thereby precluding an accurate conflicts check, and by proffering her as a witness on the "eve of trial." Ramos argued that the State's mismanagement forced him to choose between effective assistance of counsel and his right to a speedy trial. The State responded that because it disclosed Holdman's true name promptly upon learning it, there was no discovery violation or mismanagement of the case. Moreover, the State argued, because Ramos's trial had already begun on September 6, with speedy trial not expiring until September 18, 1995, any claim of prejudice was unsupported.

Finding that the State was not at fault for failing to earlier identify Holdman as a witness, the trial court nonetheless granted Ramos's motion to dismiss because "the State was in a position to provide correct information about her identity to the defense much earlier than it did." Clerk's Papers at 137. The court found:

10. The State has held the keys to handling this whole problem. The State could have chosen to go forward with its

case without calling Ms. Holdman as its witness, but the State was adamant in insisting on calling the co-defendant as a witness.

11. The State's failure to timely identify the actual identity of Tina Holden as Tina Holdman constitutes mismanagement based on the readily available information in the prosecutor's office during the pendency of this case which established her actual identity as Tina Holdman. While the mismanagement is not dishonest, it remains mismanagement.

Clerk's Papers at 138. The court concluded that the mismanagement of the information regarding Holdman's true identity constituted "violations of the duties imposed under CrR 4.7(h)(7)(i) and of the obligations created by CrR 8.3(b)," and dismissed the case with prejudice. Clerk's Papers at 138.

The State timely appealed the trial court's orders permitting withdrawal and substitution of counsel, denying its motion for reconsideration, and dismissing the prosecution under CrR 4.7 and 8.3(b).

## DISCUSSION

### I

The State contends that the trial court erred in finding an actual conflict of interest and permitting the withdrawal and substitution of counsel. Ramos responds that the trial court had no duty to determine that an actual conflict existed before permitting the withdrawal and substitution of counsel. The State is correct; Ramos is mistaken.

■ The Rules of Professional Conduct govern attorney representations when the interests of a current client conflict with those of a former client. In particular, RPC 1.9 provides:

A lawyer who has formerly represented a client in a matter shall not thereafter:

(a) Represent another person in the same or a substantially

related matter in which that person's interests are materially adverse to the interests of the former client unless the former client consents in writing after consultation and a full disclosure of the material facts; or

(b) Use confidences or secrets relating to the representation to the disadvantage of the former client, except as rule 1.6 would permit.

The determination of whether a conflict exists precluding continued representation of a client is a question of law and is reviewed de novo. *State v. Hunsaker*, 74 Wn. App. 38, 41-42, 873 P.2d 540 (1994); *Teja v. Saran*, 68 Wn. App. 793, 796, 846 P.2d 1375, *review denied*, 122 Wn.2d 1008 (1993).

Under RPC 1.10, if one member of a law firm is precluded from representing a client by RPC 1.9, all of the members of the firm are similarly precluded from representing the client. RPC 1.10; *Hunsaker*, 74 Wn. App. 42 (citing *State v. Hatfield*, 51 Wn. App. 408, 412, 754 P.2d 136 (1988)). Public Defender agencies are considered "law firms" for purposes of application of the RPC. *Hunsaker*, 74 Wn. App. at 42.

█ In the present case, neither party contends that the PDA's prior representation of Holdman on her theft charge is substantially related to the current prosecution of Ramos for his alleged violation of the Uniform Controlled Substances Act, and nothing in the record would support such a contention. Even if the matters were substantially related, the record does not indicate that Ramos' interests are "materially adverse" to Holdman's. *Compare* the instant case with *Hatfield*, 51 Wn. App. at 412 (holding that the defendant's interests were adverse to those of defense counsel's former client who was called as State's witness when both had an interest in blaming the other for the charged assault). Moreover, even if the matters were substantially related and Ramos's interests were adverse to those of Holdman, Holdman appeared in court with her counsel and waived her attorney-client

privilege arising from the previous representation. We conclude that withdrawal and substitution were not warranted under RPC 1.9(a).

Because RPC 1.9(a) and (b) are written in the disjunctive, we next examine whether withdrawal was warranted under RPC 1.9(b), i.e., whether the PDA's continued representation of Ramos would have involved inquiry into confidences and secrets relating to the prior representation of Holdman to Holdman's disadvantage. Although Ramos successfully argued below that the PDA's continued representation of him would have involved such an inquiry, nothing in the record supports this argument.

In *State v. Anderson*, 42 Wn. App. 659, 713 P.2d 145 (1986), the defendant requested withdrawal and substitution of counsel on the second day of trial when it was discovered that a member of his court-appointed counsel's defender association had previously represented one of the State's witnesses. The defendant asserted that a conflict of interest had arisen because he intended to cross-examine the witness about his alcohol consumption on the night of the crime; because the witness was on probation and one of the conditions of probation was that the witness not consume alcohol, defendant argued that a potential for detriment to the witness existed. *Anderson*, 42 Wn. App. at 664.

The trial court disagreed, concluding that the conditions of the witness's probation were public information, and that any cross examination of the witness would be based upon facts discovered by defense counsel in the preparation of defendant's case and not as a result of any prior representation of the witness. *Anderson*, 42 Wn. App. at 664. Noting further that the witness agreed to testify after being advised of the possible conflict and his privilege against self incrimination, this court affirmed the trial court's determination that no actual conflict of interest existed under the facts of the case. *Anderson*, 42 Wn. App. at 664-65.

This court reached a similar result in *Hunsaker*. In *Hun-*

*saker*, the defendant was charged with child molestation in the first degree. He was represented by a member of PDA. Approximately one week before trial, the State contacted defense counsel, advising her of a new witness. On the speedy trial expiration date, the defendant requested that the court exclude the testimony of the new witness because the witness had previously been represented in a juvenile matter by a member of PDA. The defendant argued that RPC 1.9 and 1.10 would preclude his current counsel from continuing to represent him if the witness were permitted to testify. Finding that a conflict of interest existed, the trial court agreed. *Hunsaker*, 74 Wn. App. at 40-41.

■ On appeal, this court reversed, holding that "[t]he Superior Court erred in concluding that [the defendant's] counsel was required to withdraw pursuant to RPC 1.9 and 1.10." *Hunsaker*, 74 Wn. App. at 48. In defense of his position on appeal, the, defendant argued:

> An effective defense of [the defendant] would require that if [the witness] testified, [the witness] be discredited as a witness. If confidences and secrets were available to defense counsel, *e.g.*, if defense counsel or her associate had represented [the witness] in the past, such a tactic would involve use of confidences and secrets to [the witness's] disadvantage[.]

*Hunsaker*, 74 Wn. App. at 47. This court rejected the defendant's argument, noting that it "assume[d] too much." *Id.* Specifically, this court held:

> [The defendant] has failed to present any evidence that cross examination of [the witness] would involve inquiry into confidences or secrets acquired by [the PDA]. At most, it appears that [the defendant] intends to discredit [the witness] based upon his recent juvenile convictions. This information would be available to defense counsel in discovery. Accordingly, [the defendant] has failed to demonstrate that disqualification is necessary pursuant to RPC 1.9(b).

*Hunsaker*, 74 Wn. App. at 48.

Applying *Anderson* and *Hunsaker* to the present case, we conclude that the trial court erred in finding that an actual conflict of interest existed requiring the withdrawal and substitution of counsel. As in both cited cases, Ramos failed to present any evidence that cross examination of Holdman would involve inquiry into confidences or secrets acquired by PDA in its prior representation of her. Although Ramos stated an intention to attack Holdman's credibility, in the absence of any contrary showing we can only conclude that such an attack would be based on Holdman's prior theft conviction, the existence of which was public information which had already been disclosed by the State. Because the existence of Holdman's prior conviction was available to Ramos' PDA counsel in discovery, and not as a result of any prior representation of her by PDA, we conclude that withdrawal and substitution were not warranted under RPC 1.9(b).

■ Pointing to *In re Richardson*, 100 Wn.2d 669, 675 P.2d 209 (1983), Ramos argues that withdrawal and substitution were nevertheless required to ensure Ramos's Sixth Amendment right to effective representation of counsel. Ramos argues in addition that the Rules of Professional Conduct do not control when a defendant's confidence in the undivided loyalty of his court-appointed counsel is at issue. The State responds, and correctly so, that *Richardson* places an affirmative duty on a trial court to determine whether an actual conflict exists, once the court is given notice of the potential for a conflict. *Richardson*, 100 Wn.2d at 677. Moreover, unless an actual conflict exists, there has been no denial of effective assistance of counsel. *Richardson*, 100 Wn.2d at 678 (remanding to the superior court for a fact-finding hearing to determine the nature of the witness's relationship with defense counsel and directing that the personal restraint petition be granted if an actual conflict of interest existed, and that the petition be denied if no actual conflict existed).

■ ■ Here, the record fails to support Ramos's claim

that an actual conflict of interest existed. Moreover, even if the trial court had conducted an adequate inquiry and an actual conflict had been shown, Holdman appeared in open court with her counsel and affirmatively waived her attorney-client privilege. The privilege belongs to the client whose prior representation gave rise to the conflict of interest. RPC 1.9; 1.6. Once Holdman waived the privilege, Ramos's PDA counsel was freed from any restraints on cross examination of her which might otherwise have arisen based on the prior representation. Ramos's constitutional right to effective counsel was, therefore, not in jeopardy based on the prior representation. That Ramos might have felt some lingering, subjective lack of confidence in his court-appointed counsel's undivided loyalty based on the prior representation does not change our analysis. An accused has the constitutional right to effective assistance of counsel, not to a subjective sense of confidence in court-appointed counsel. *Cf. State v. Sinclair*, 46 Wn. App. 433, 436, 730 P.2d 742 (1986) (defendant's failure to articulate anything more than general discomfort with court-appointed counsel does not justify appointment of substitute counsel), *review denied*, 108 Wn.2d 1006 (1987). The trial court erred by ordering the withdrawal and substitution of counsel on grounds that substitution was necessary to preserve Ramos's right to effective assistance of counsel.

## II

The State contends that the trial court abused its discretion in dismissing the charge because the prosecutors committed neither discovery violations nor mismanagement, and because the record fails to reflect any prejudice to Ramos. Ramos responds that the State's misidentification of Holdman's true surname constituted mismanagement. Contending that this mismanagement forced him to choose between effective assistance of counsel and his right to a speedy trial, Ramos argues that the trial court was within its discretion in dismissing the prosecution. The State is correct; Ramos is mistaken.

## A. Discovery Violation and Mismanagement

CrR 4.7 governs criminal discovery. *State v. Blackwell*, 120 Wn.2d 822, 826, 845 P.2d 1017 (1993) (citing *State v. Pawlyk*, 115 Wn.2d 457, 471, 800 P.2d 338 (1990)). The discovery rule is reciprocal, listing separately both the prosecutor's and the defendant's obligations when engaging in discovery. *Blackwell*, 120 Wn.2d at 830 (citing *State v. Yates*, 111 Wn.2d 793, 797, 765 P.2d 291 (1988)). Among the prosecutor's obligations is the following:

> (1) Except as otherwise provided by protective orders or as to matters not subject to disclosure, the prosecuting attorney shall disclose to the defendant the following material and information within the prosecuting attorney's possession or control no later than the omnibus hearing:

> (i) the names and addresses of persons whom the prosecuting attorney intends to call as witnesses at the hearing or trial, together with any written or recorded statements and the substance of any oral statements of such witnesses[.]

CrR 4.7(a). The discovery rule imposes a continuing duty to disclose. Specifically, CrR 4.7(h)(2) provides:

> If, after compliance with these rules or orders pursuant thereto, a party discovers additional material or information which is subject to disclosure, the party shall promptly notify the other party or their counsel of the existence of such additional material, and if the additional material or information is discovered during trial, the court shall also be notified.

CrR 4.7(h)(2).

The State contends that the record lacks factual support for the trial court's findings that it violated the criminal discovery rule and mismanaged the case. The court found:

> The State's failure to timely identify the actual identity of Tina Holden as Tina Holdman constitutes mismanagement based on the readily available information in the prosecutor's office during the pendency of this case which established her actual identity as Tina Holdman. While the mismanagement is not dishonest, it remains mismanagement.

Clerk's Papers at 138.

■ The record contains no evidence that information in the prosecutor's office, readily available or otherwise, established Holdman's true surname. Based on the record before this court, we remain uncertain even today of Holdman's true surname. Unfortunately, many people who are brought before the criminal courts prefer to utilize aliases and may, as seemingly occurred here, persuade police and prosecutors that their true names are something other than their actual true names. Fingerprint data-bases, mugshots, conviction records, "rap" sheets and other resources available to the State may tie a given defendant to any number of aliases, but rarely will confirm his or her true legal name. Requiring the State to ascertain with certainty and notify the defense of the true name of every co-defendant and potential witness known or suspected to be using an alias would be an impossible burden. It is one we decline to impose. Too often, a co-defendant's or witness's true name might be known only to that person and his or her mother.

Here, the State provided the defense during discovery with both variations of Ms. Holdman's name and with both birthdates contained in the police reports. Although the State had some indication at the omnibus hearing that Holdman might turn State's evidence, Holdman did not reveal her actual intention to do so until the day before trial. Until she actually signed the plea bargain and entered her guilty plea on the morning of the first day of trial, the State had no way of knowing that she would, in fact, be available as a witness. Until that moment, Holdman was a co-defendant in the VUCSA case. Although the State utilized the name Holden in the conflicts report, it did so under the good faith misapprehension that such was Holdman's true name. On these facts, we can conclude only that the State honored the letter and spirit of the discovery rules. Moreover, the defense had both surnames and birthdates in its possession by virtue of discovery, and could have checked for conflicts at

any time. That a co-defendant might turn State's evidence is not unforeseeable. The record in this case does not support the trial court's finding of mismanagement.

## B. Remedies for Discovery Violations

Even if the finding of mismanagement had been supported by the evidence before the trial court, the court's choice of remedy was too harsh.

The remedies for discovery violations are set forth in CrR 4.7(h)(7)(i), which states that if a party fails to comply with an applicable discovery rule, the court may "grant a continuance, dismiss the action or enter such other order as it deems just under the circumstances." CrR 4.7(h)(7)(i). Dismissal is also permitted under CrR 8.3(b), which provides, in pertinent part, that:

> The court, in the furtherance of justice, after notice and hearing, may dismiss any criminal prosecution due to arbitrary action or governmental misconduct when there has been prejudice to the rights of the accused which materially affect the accused's right to a fair trial.

CrR 8.3(b).[2]

■■ Dismissal of a criminal prosecution for discovery violations is discretionary and is reviewable only for manifest abuse of discretion. *State v. Hanna*, 123 Wn.2d 704, 715, 871 P.2d 135, *cert. denied*, 115 S. Ct. 299 (1994); *Blackwell*, 120 Wn.2d at 830; *State v. Rundquist*, 79 Wn. App. 786, 793, 905 P.2d 922 (1995), *review denied*, 129 Wn.2d 1003 (1996); *State v. Smith*, 67 Wn. App. 847, 851, 841 P.2d 65 (1992), *review denied*, 121 Wn.2d 1019 (1993). Discretion is abused when the trial court's decision is manifestly unreasonable, or is exercised on untenable grounds or for untenable reasons. *Blackwell*, 120 Wn.2d at 830; *Rundquist*, 79 Wn. App. at 793. Although the court rules "clearly allow the trial court to grant a continuance

---

[2]The rule as quoted reflects the amendments made June 13, 1995, effective September 1, 1995.

'when required in the administration of justice and the defendant will not be substantially prejudiced in the presentation of the defense,' " dismissal for discovery violations is an extraordinary remedy. *Smith*, 67 Wn. App. at 852 (quoting CrR 3.3(h)(2); *State v. Guloy*, 104 Wn.2d 412, 428, 705 P.2d 1182 (1985), *cert. denied*, 475 U.S. 1020 (1986)). The determination of whether dismissal is an appropriate remedy is a fact-specific one that must be resolved on a case-by-case basis. *State v. Sherman*, 59 Wn. App. 763, 770-71, 801 P.2d 274 (1990), *review denied*, 121 Wn. App. 1019 (1993).

 Arguing that the record is devoid of evidence of prejudice to Ramos arising from the late disclosure of Holdman as a State's witness, the State contends that dismissal was an improper remedy in this case. We agree. In *State v. Price*, 94 Wn.2d 810, 620 P.2d 994 (1980), our Supreme Court held:

> We agree that if the State inexcusably fails to act with due diligence, and material facts are thereby not disclosed to defendant until shortly before a crucial stage in the litigation process, it is possible either a defendant's right to a speedy trial, or his right to be represented by counsel who has had sufficient opportunity to adequately prepare a material part of his defense, may be impermissibly prejudiced. Such unexcused conduct by the State cannot force a defendant to choose between these rights. *The defendant, however, must prove by a preponderance of the evidence that interjection of new facts into the case when the State has not acted with due diligence will compel him to choose between prejudicing either of these rights.*

*Price*, 94 Wn.2d at 814 (emphasis added).

Applying the rule set forth in *Price*, this court in *Sherman* affirmed the trial court's dismissal of a prosecution based on the State's failure to provide discovery after repeated orders to do so. Noting that the speedy trial expiration date had been extended seven times, and was scheduled to expire again on the day the case was dismissed, this court rejected the State's argument that a continuance was the proper remedy:

> To require [the defendant] to request a continuance under these circumstances would be to present her with a Hobson's choice: she must sacrifice either her right to a speedy trial or her right to be represented by counsel who had sufficient opportunity to prepare her defense.

*Sherman*, 59 Wn. App. at 769. *See also Smith*, 67 Wn. App. at 852-54 (affirming trial court's denial of motion to dismiss, holding that *Price* does not require dismissal in every case where untimely discovery by the State affects the defendant's ability to prepare the defense within the speedy trial period; the rule in *Price* is not an absolute bar to granting a continuance beyond the speedy trial period to enable the defense to address new discovery).

Unlike the defendant in *Sherman*, Ramos was not presented with a Hobson's choice. First, he was properly brought to trial within the speedy trial period. For purposes of CrR 3.3(c)(1), a defendant is brought to trial when his or her case is called for trial, the trial judge hears and decides preliminary motions, and the jury is chosen. *State v. Becerra*, 66 Wn. App. 202, 206, 831 P.2d 781 (1992); *State v. Redd*, 51 Wn. App. 597, 608, 754 P.2d 1041, *review denied*, 111 Wn.2d 1007 (1988); *State v. Mathews*, 38 Wn. App. 180, 183, 685 P.2d 605, *review denied*, 102 Wn.2d 1016 (1984). Second, Ramos' speedy trial expiration date was September 18, 1995. Even if substitution of counsel had been appropriate, there is no showing in this record that substitute counsel could not have become prepared for trial during the twelve days remaining before the speedy trial expiration date. Third, Ramos invited the trial court's error of ordering substitute counsel, and he could not, therefore, properly be heard to argue that he was given the Hobson's choice of choosing between a speedy trial and adequately prepared counsel, even if the State had mismanaged the case.

Reversed and remanded for reinstatement of the VUCSA charge and scheduling of a new trial date.

GROSSE and AGID, JJ., concur.