[No. 8660-0-I.  Division One.  June 29, 1981.]

THE STATE OF WASHINGTON, *Respondent*, v. GARLAND B. BRADFIELD, *Appellant*.

*John Henry Browne* and *John Wolfe,* for appellant.

*Russ Juckett, Prosecuting Attorney,* and *Asa Glazer, Deputy,* for respondent.

CORBETT, J.—Defendant appeals his conviction for murder in the first degree and rape in the first degree.

On September 9, 1979, the parents of the victim found her nude body on the floor of her apartment, her legs were spread apart and a catsup bottle inserted in the vagina. She was bruised, her skull was fractured and her rib cage had

been struck hard enough to tear the liver. Death was caused by a cord wrapped tightly around the neck. Her stereo equipment had been stolen from the apartment.

The defendant was seen in the vicinity of the apartment on one or two occasions during the police investigation. The stolen stereo equipment was seen in his home within a few hours after the death and was retrieved from there after the police obtained a search warrant for the house. Pubic hairs similar to those of the defendant were found on the catsup bottle and in combings of the victim's pubic area. Two witnesses testified to having overheard conversations of the defendant while in custody in which he admitted the murder.

On September 12, the defendant was arrested on another charge and detained in the Snohomish County jail. On September 18, defendant was arraigned on the present charges of rape in the first degree, and murder in the first degree. Trial was set for November 5. On October 5, defendant was granted a continuance of the trial to January 14, 1980. On November 26, 1979, a second defense counsel, Kenneth Lee, was appointed to assist in the investigation and preparation of the defense. Four days prior to the trial date, the State disclosed that it intended to call a witness who was represented by Mr. Lee. Due to this conflict of interest, Mr. Lee moved to withdraw as counsel for defendant. On the trial date, the court excluded the witness' testimony rather than deprive the defendant of Lee's representation. The State sought and was granted discretionary review of this order which resulted in a reversal of the suppression order. Mr. Lee was allowed to withdraw on February 11, and the trial was reset for February 25. Defendant requested a trial date of March 1. On that day, the State was granted a 1-week continuance due to the absence of a witness. Trial began on March 10, and the defendant was found guilty by a jury and later sentenced on April 4.

The first assignment of error is government misconduct. Defendant claims that there were repeated violations

of the discovery rules which constitute mismanagement of the case under *State v. Dailey,* 93 Wn.2d 454, 610 P.2d 357 (1980). In the *Dailey* case, the trial court had dismissed the action on its own motion, pursuant to CrR 8.3(b), finding a denial of due process by reason of delayed discovery and a delay in endorsing witnesses for the State until almost the day of trial. This dismissal was upheld as being within the sound discretion of the trial court. In the instant case, which is quite similar in its fact pattern of delayed discovery, defendant contends that there was a violation of discovery rules and that the trial court erred by not imposing the sanction of dismissal, pursuant to CrR 4.7(h)(7)(i), which provides:

> If at any time during the course of the proceedings it is brought to the attention of the court that a party has failed to comply with an applicable discovery rule or an order issued pursuant thereto, the court may order such party to permit the discovery of material and information not previously disclosed, *grant a continuance, dismiss the action or enter such other order as it deems just under the circumstances.*

(Italics ours.) As pointed out in the defendant's brief on appeal, the distinction between *Dailey* and the present case is that here the trial did not begin on January 14, but began almost 3 months later because of the interlocutory appeal. The purpose of CrR 4.7 is to protect against surprise thereby prejudicing the defense. Absent some showing of actual prejudice, we will not interfere with the trial court's exercise of discretion in denying sanctions pursuant to CrR 4.7(h)(7)(i).

Defendant next contends that the Court of Appeals had no jurisdiction to hear a request for discretionary review by the State. Reference is made to RAP 2.3(b)(2):

> [D]iscretionary review will be accepted only:
>
> . . .
>
> (2) If the superior court has committed probable error and the decision of the superior court substantially alters the status quo or substantially limits the freedom of a party to act, . . .

■ The review arose out of the trial court ruling to exclude testimony of a witness who had overheard the defendant admit to the crime, rather than to allow defendant's second attorney to withdraw because of the conflict of interest. This court found that the trial court committed probable error in excluding the evidence and considered the appeal. Because the question of jurisdiction should have been raised and determined in the first appeal, the defendant is precluded from raising it in this appeal.

> This court from its early days has been committed to the rule that questions determined on appeal or questions which might have been determined had they been presented, will not again be considered on a subsequent appeal in the same case.

(Citations omitted.) *Davis v. Davis,* 16 Wn.2d 607, 609, 134 P.2d 467 (1943), cited with approval in *State v. Bauers,* 25 Wn.2d 825, 830, 172 P.2d 279 (1946).

■ The defendant's next argument is that pursuant to article 1, sections 10 and 22 of the Washington State Constitution, the State does not have the right to appeal a criminal case and therefore was precluded from appealing the trial court's suppression of the witness' testimony. This argument was considered and rejected in *State v. Whitney,* 69 Wn.2d 256, 258, 418 P.2d 143 (1966); *County of Spokane v. Gifford,* 9 Wn. App. 541, 513 P.2d 301 (1973). There being no constitutional prohibition against appeal by the State, the appeal was properly before this court.

■ Defendant contends that the 6–month delay between arrest and trial was a violation of his constitutional right to a speedy trial.

> The standards by which this fundamental right is measured are clear:
> (1) a delay of such length alone as to amount to a denial of the right to a speedy trial; (2) prejudice to the defense arising from the delay; (3) a purposeful delay designed by the state to oppress the defendant; or (4) long and undue imprisonment in jail awaiting trial.

*State v. Wieman,* 19 Wn. App. 641, 645, 577 P.2d 154 (1978); *State v. Christensen,* 75 Wn.2d 678, 686, 453 P.2d

644 (1969); *State v. Brewer*, 73 Wn.2d 58, 436 P.2d 473 (1968). The defendant has failed to prove that the delay amounted to a denial of his right to a speedy trial, that he was prejudiced in any way by the delay, that the State purposefully designed the delay to oppress the defendant or that his imprisonment in jail awaiting trial was long and undue. The delay for the interlocutory review afforded ample time for both attorneys to investigate the case and complete pretrial preparation. The defendant's constitutional right to a speedy trial was not violated.

Defendant next contends that an early morning interrogation violated his rights under *Miranda*. The detectives obtained a search warrant for his home and executed it during the early morning hours of September 13. Upon discovering the stolen stereo equipment, they went to the jail, awakened the defendant at 3:30 a.m. and confronted him with the evidence. Before interrogation, the defendant signed a waiver of his *Miranda* rights. After a brief exchange and a request by the detective that he expand upon an answer, the defendant responded that he had nothing further to say. The defendant then "quit talking about the stereo", but continued the conversation. The State summarizes the testimony of the detective in its brief:

> [W]e would talk about the morality of murdering somebody, and we talked about his relatives, and I would ask him again, after a long period of time, if he wishes to tell us about the murder now, and he would think about it and he would respond by saying, "I don't want to talk about it," and this went on for two hours. At the end of it, I asked him now "Do you want to tell us about this murder," and he said, "Not now," and I asked him during this interview also why he was talking to us. He didn't have to talk with us, he could leave. We were tired. We didn't want to stay up any longer than he did.

Defendant complains of the admission of these nonresponsive answers. During the conversation, the defendant did not request an attorney and would talk about anything except the stereo and murder. Defendant asserts that when he said, "I don't want to talk about it," all interrogation

should have ceased. The State contends that in the context of the conversation, the refusal was ambiguous and his continued conversation amounted to a selective waiver of his Fifth Amendment rights by indicating he would respond to some questions but not to others. *United States v. Lorenzo,* 570 F.2d 294, 297 (9th Cir. 1978). The defendant cannot be permitted to rely upon *Miranda* when he attempts to toy with the police by telling only facts which he wants them to hear. *State v. Young,* 89 Wn.2d 613, 621, 574 P.2d 1171 (1978). His "nonstatements" were therefore properly admitted.

■■ Defendant complains of assertions made by the prosecutor in his opening statement to the jury regarding "mathematical probabilities" in hair analysis and identification. This was not testified to during the trial and the verbatim report of proceedings does not include the opening statement. We therefore cannot consider the alleged error. *State v. Beckstrom,* 17 Wn. App. 372, 376, 563 P.2d 217 (1977). The State's expert witness concluded that there was a possibility that the hairs in question were those of the defendant. Because this opinion was based upon her professional knowledge and skill as an expert, it was properly admitted. *State v. Batten,* 17 Wn. App. 428, 438, 563 P.2d 1287 (1977).

The defendant offered proof of pubic and head hairs not similar to those of the victim having been found in her apartment. He assigns error to the trial court's rejection of this evidence, contending that it was logically relevant and probative. There was no evidence linking the foreign hairs with another person who could have committed the crime. The evidence was therefore properly excluded. *State v. Jones,* 26 Wn. App. 551, 553, 614 P.2d 190 (1980).

■ Finally, defendant assigns error to refusal by the trial court to admit a certified copy of the death certificate. The certificate showed a date of death other than that testified to by the State's expert witness. The certificate had been signed by the witness, the medical examiner for King County, in blank and filled in after being forwarded to the

Snohomish County authorities. The trial court refused the exhibit because it had not been signed by the coroner or prosecuting attorney as required by RCW 70.58.180.

> The usual public record sought to be introduced as an exception to the hearsay rule has been prepared by a public official who had a duty to make it. Its reliability is based upon that assumption. Where the official has neither prepared the document nor from first–hand knowledge can authenticate its preparer, a proper foundation for its admissibility has not been laid.

(Citation omitted.) *Tire Towne, Inc. v. G & L Serv. Co.,* 10 Wn. App. 184, 190, 518 P.2d 240 (1973). The trial court did not err in refusing the death certificate.

Affirmed.

WILLIAMS and CALLOW, JJ., concur.

Reconsideration denied August 11, 1981.

Review denied by Supreme Court November 20, 1981.