[No. 17890–3–I.   Division One.   August 17, 1987.]

THE STATE OF WASHINGTON, *Respondent*, v. JAMES DANIEL GREENE, *Appellant*.

*Neil M. Fox* of *Washington Appellate Defender Association,* for appellant.

*Norm Maleng, Prosecuting Attorney,* and *Ricardo S. Martinez, Deputy,* for respondent.

SWANSON, J.—James Daniel Greene appeals from the judgment and sentence following his conviction for first degree robbery. Greene contends the trial court erred in failing to dismiss the charge following violation of his CrR 3.3 speedy trial rights and the State's violation of discovery rules.

At about 9:30 p.m. on May 24, 1985, a man flashing what appeared to be the handle of a gun robbed the Cafe Casino in downtown Seattle. The cashier gave the robber, who was carrying a yellow Nordstrom bag, approximately $250. The cashier later identified Greene as the robber.

Officers Stephen and Little responded to the robbery within several minutes. Officer Stephen eventually discovered the appellant, injured and bleeding, near the corner of 5th and Union. Greene told the officer he had been mugged by several men. Approximately $269 was recovered from Greene. On May 25, the next day, a security guard found a Nordstrom bag containing a plastic gun on a nearby roof or ledge.

Because of the severity of his injuries, Greene was taken to the hospital following his arrest; he remained immobilized in a body cast for several months. Detective Gordon Barnett, allegedly at Greene's request, went to the hospital

on May 28, 1985, where Greene signed a written statement indicating that he had been jumped by three men after leaving the Cafe Casino and had fallen out of a tree while attempting to escape.

Greene was charged with first degree robbery and arraigned on June 19, 1985, while still hospitalized. Because of Greene's physical condition, his counsel subsequently sought a continuance; Greene executed a waiver of the speedy trial period to October 21, 1985. The primary issues on appeal arise from the following series of pretrial hearings.

October 15, 1985. Greene's case was assigned out and the parties appeared before Judge Haley for a CrR 3.5 hearing and for trial. Greene's counsel, Michael Iaria, indicated that he had been ready "up until about half an hour ago," when he learned for the first time of Greene's written statement to Detective Barnett.

Arguing that the existence of the statement "changed the defense case radically," Iaria requested that the statement be excluded or that he be granted a continuance to investigate the surrounding circumstances. Counsel stated that he would have to examine Greene's medical records and talk with persons who had contact with Greene at the time in order to determine whether the statement had been given voluntarily. When court reconvened in the afternoon, Iaria withdrew his request for a continuance, contending that the only proper remedy for the State's actions was exclusion or dismissal and that the defendant should not be forced to waive his speedy trial rights because of the State's failure to provide discovery. Charlotte Cassady, an investigator for the Public Defender's Office, maintained she would be unable to carry out the investigation in a week.

The court then informed Iaria he would have until October 21, the expiration of the speedy trial period, to investigate the matter as he deemed appropriate. The court also offered to authorize the expenditure of funds for an additional investigator and, apparently, signed an order requiring Harborview to have all of Greene's medical records

made available for copying on the same day.

October 21, 1985. A minute entry records that the case was continued "because of illness of the D.P.A."

October 22, 1985. Iaria informed the court he had undertaken some investigation but had not yet spoken to all necessary parties. After inquiring about what Iaria had accomplished during the previous 6 days, the trial court denied the defense's motion to dismiss and declared that the proceedings would resume with the CrR 3.5 hearing. Iaria repeatedly maintained that he was unprepared to proceed.

The State called two witnesses who testified about Greene's oral statement at the scene of the crime and his written statement several days later. Iaria cross-examined Detective Barnett only briefly regarding the written statement. The trial court then ruled both statements admissible. Following the CrR 3.5 hearing, the trial court heard and ruled on all of Greene's motions in limine.

Charlotte Cassady then testified about the extent of her investigations since October 15. Cassady, who had spent approximately 16 hours on the case, had interviewed nine doctors and nurses, examined Greene's medical records, and subpoenaed the names of the officers who had been guarding Greene at the time the statement was made. Cassady maintained she still needed to contact eight medical persons in addition to interviewing the officers.

After reviewing Greene's medical records, Judge Haley again denied defendant's motion to dismiss, ruling that he could find no reason why defense counsel was not yet ready to proceed. Iaria then requested a continuance to pursue his investigation. The motion was granted.

October 23, 1985. The parties appeared before Judge Pekelis, who set a new trial date of November 5; Greene signed a speedy trial waiver to November 20, 1985.[1]

---

[1]The judge permitted Greene to add the following notation to the waiver: ". . . this waiver does not serve to waive the speedy trial arguments made before the Honorable Donald Haley on 10/15/85 and 10/22/85."

<u>November 18, 1985</u>. The proceedings resumed on this day before Judge Elston, who ruled on some, but not all, of the same motions in limine decided by Judge Haley on October 22. Defense counsel declined an opportunity to present additional arguments on the CrR 3.5 issues.

At trial, Greene maintained he had been in Seattle on May 24 working undercover for the King County Drug Enforcement Unit. Greene stated he was selling drugs in an attempt to infiltrate a gang dealing in tar heroin. A detective denied that Greene was working for the Drug Enforcement Unit.

Later in the day, Greene suspected that several of his clients might try to rob him of the drugs he was carrying and went to the Cafe Casino. Upon exiting the restaurant, Greene claimed he was attacked from behind by several men. After being hit numerous times with an unidentified object, Greene said that he managed to climb up on a ledge and from the ledge onto the building's roof. With the men still chasing him, he ran to another part of the roof and jumped onto one of the nearby trees. The tree failed to hold him, and Greene fell about 25 to 30 feet to the pavement. He then crawled closer to the building, where he was discovered by Officer Stephen. A jury found Greene guilty as charged.

Greene initially contends that his speedy trial rights were violated because he was not brought to trial within the time mandated by CrR 3.3. Because Greene remained essentially in police custody, he had to be brought to trial within 60 days of arraignment. *See* CrR 3.3(c)(1). It is conceded, however, that Greene waived his speedy trial rights at least through October 21, 1985. On October 21, the trial court granted a continuance because of the deputy prosecutor's illness; the proceedings resumed the next day. Consequently, if the 1–day continuance was valid, the speedy trial period expired no earlier than October 22. *See* CrR 3.3(g)(2) (excluding from speedy trial period delays granted pursuant to CrR 3.3(h)).

Although the record does not reveal the portion of CrR

54

3.3 relied upon, at least two sections support the trial court's grant of a continuance on October 21. CrR 3.3(d)(8)[2] permits the trial court to extend the time within which trial must be held for periods up to 5 days, even if the speedy trial period has expired. A CrR 3.3(d)(8) "extension" may be granted only when "unavoidable or unforeseen circumstances beyond the control of the court or parties" arise, provided the defendant will not be "substantially prejudiced in his or her defense." Former CrR 3.3(h)(2)[3] authorizes the court to grant a continuance "or other delay" upon the motion of a party or the court "when required in the administration of justice and the defendant will not be substantially prejudiced" in the presentation of his or her defense. The court must state "on the record or in writing" the reasons for the continuance.

Although the practical effect of these sections is similar—delaying expiration of the speedy trial period—CrR 3.3(d)(8) extensions and CrR 3.3(h)(2) continuances have slightly differing requirements and may apply in different circumstances. *See generally State v. Raper,* 47 Wn. App.

---

[2]CrR 3.3(d)(8) provides in pertinent part:

"**(d) Extensions of Time for Trial.** The following extensions of time limits apply notwithstanding the provisions of section (c):

". . .

"(8) *Five-day Extensions.* When a trial is not begun on the date set because of unavoidable or unforeseen circumstances beyond the control of the court or the parties, the court, even if the time for trial has expired, may extend the time within which trial must be held for no more than 5 days exclusive of Saturdays, Sundays, or holidays unless the defendant will be substantially prejudiced in his or her defense. The court must state on the record or in writing the reasons for the extension."

[3]Former CrR 3.3(h)(2) provides in pertinent part:

"**(h) Continuances.** Continuances or other delays may be granted as follows:

". . .

"(2) On motion of the State, the court or a party, the court may continue the case when required in the administration of justice and the defendant will not be substantially prejudiced in the presentation of his or her defense. The motion must be filed on or before the date set for trial or the last day of any continuance or extension granted pursuant to this rule. The court must state on the record or in writing the reasons for the continuance."

530, 736 P.2d 680, *review denied,* 108 Wn.2d 1023 (1987). The trial court's decision granting a continuance or extension is reviewed only for an abuse of discretion. *State v. Terrovona,* 105 Wn.2d 632, 651, 716 P.2d 295 (1986); *State v. Eaves,* 39 Wn. App. 16, 21, 691 P.2d 245 (1984).

■ Greene argues that the procedural requirements of CrR 3.3(d)(8) and CrR 3.3(h)(2) were not met because no formal motion for a continuance was entered and there was no express finding that a delay was necessary "in the administration of justice" or because of "unavoidable or unforeseen circumstances". Greene further maintains that the minute entry does not constitute a statement by the court "on the record or in writing" of the reasons for the continuance. However, there is no contention that Greene was "substantially prejudiced in the presentation of the defense" by the 1–day delay. CrR 3.3(h)(2).

Although a continuance should be sought and entered upon a formal motion and record, a failure to do so does not nullify the proceeding if a record of the proceeding and the reasons for the continuance is otherwise made. *State v. Freeman,* 38 Wn. App. 665, 667, 687 P.2d 858 (1984) (construing JuCR 7.8); *State v. Colbert,* 17 Wn. App. 658, 663, 564 P.2d 1182, *review denied,* 89 Wn.2d 1010 (1977). In reviewing a continuance, the appellate court may examine the entire record to determine the trial court's reason for granting the continuance. *Freeman.*

Greene does not challenge the substance of the minute entry, *i.e.,* that the trial court continued the matter because the deputy prosecutor was ill. The basis of the court's action is also evident in the record from the colloquy of the parties on October 22. *See State v. Palmer,* 38 Wn. App. 160, 163, 684 P.2d 787 (1984).

■ The illness of counsel may be an unavoidable and unforeseen circumstance beyond the control of the court or the parties as well as a circumstance justifying delay "in the administration of justice." *Cf. State v. Brown,* 40 Wn. App. 91, 697 P.2d 583 (counsel's unavailability for trial because of scheduling conflict justified continuance), *review denied,*

103 Wn.2d 1041 (1985); *State v. Palmer, supra* (trial deputy's scheduling difficulties justified extension); *see also* 12 R. Ferguson, Wash. Prac., *Criminal Practice and Procedure* § 1216 (1984). A brief delay for this purpose comports with both CrR 3.3 and with common sense. Consequently, whether the 1–day delay is viewed as a continuance pursuant to CrR 3.3(h)(2) or an extension pursuant to CrR 3.3(d)(8), the trial court did not abuse its discretion. The speedy trial period did not expire until October 22 at the earliest. The crucial issue on appeal therefore is whether the trial court erred in denying Greene's motion to dismiss on October 22.

Greene contends that the State's failure to use due diligence in providing discovery compelled him to choose between prejudicing his CrR 3.3 speedy trial rights or his right to effective assistance of counsel. He asserts the only proper remedy is therefore dismissal.

It is undisputed that the State failed to comply with the defendant's discovery request. No copy of the defendant's written statement was provided until October 15, the day trial was initially set to begin. The record provides no explanation for this deficiency other than inadvertence. When a party fails to comply with discovery rules, the trial court may order discovery, grant a continuance, dismiss the action, or enter "such other order as it deems just"; suppression of the evidence is not one of the available sanctions. CrR 4.7(h)(7)(i); *State v. Thacker,* 94 Wn.2d 276, 280, 616 P.2d 655 (1980). In *State v. Price,* 94 Wn.2d 810, 814, 620 P.2d 994 (1980), our Supreme Court observed that:

> if the State inexcusably fails to act with due diligence, and material facts are thereby not disclosed to defendant until shortly before a crucial stage in the litigation process, it is possible either a defendant's right to a speedy trial, or his right to be represented by counsel who has had sufficient opportunity to adequately prepare a material part of his defense, may be impermissibly prejudiced. *Such unexcused conduct by the State cannot force a defendant to choose between these rights.*

(Italics ours.) In *Price,* the State filed an amended infor-

mation that injected new facts into the case just before trial. However, no violation of CrR 3.3 occurred because there was no showing that the State failed to use due diligence in filing the amended information. *Price,* at 815; *see also State v. Stock,* 44 Wn. App. 467, 722 P.2d 1330 (1986).

*Price* implies that dismissal under CrR 3.3 is appropriate if the State inexcusably fails to provide timely discovery on a material matter. If the proper remedy were merely a continuance, a defendant would never be forced to choose between a speedy trial and effective assistance of counsel since a continuance would almost always ensure adequate preparation. Although dismissal is an extraordinary remedy, *State v. Laureano,* 101 Wn.2d 745, 682 P.2d 889 (1984), a failure to comply with the provisions of CrR 3.3 requires dismissal. CrR 3.3(i); *cf.* CrR 8.3(b) (court may dismiss criminal prosecution on its own motion in furtherance of justice); *State v. Stephans,* 47 Wn. App. 600, 736 P.2d 302 (1987) (upholding trial court's dismissal pursuant to CrR 8.3(b)).[4]

██ Even assuming that the State failed to exercise due diligence, a matter we do not decide, no error occurred here. Under the analysis set forth in *Price,* the defendant bears the burden of proving "by a preponderance of the evidence that interjection of new facts into the case when

---

[4]The effect of *Price* has been clouded by the subsequent decision in *State v. Guloy,* 104 Wn.2d 412, 428, 705 P.2d 1182 (1985), *cert. denied,* 106 S. Ct. 1208 (1986). In *Guloy,* the court upheld a 61–day speedy trial period after one of the two defendants requested a continuance when the State provided the names of six new witnesses 2 days before trial. Without discussing *Price,* the court implies that a continuance is proper even when a defendant may be forced to choose between a speedy trial and effective assistance of counsel. *Guloy,* at 428.

The discussion in *Guloy* is sketchy, however. There is no indication whether the State was dilatory in failing to provide the witness list at an earlier stage. The court appears to uphold the trial court's grant of a continuance under CrR 3.3(h)(2). Continuances granted under this section are excluded from speedy trial calculations. CrR 3.3(g)(3). However, the court's repeated reference to the 61–day period between arraignment and trial implies that the speedy trial period was not tolled by the continuance: "While the amount of time was increased to 61 days from the date of arraignment, we hold that under these facts this is permissible." *Guloy,* at 428; *see also Guloy,* at 433 (Goodloe, J., dissenting in part).

the State has not acted with due diligence will compel him to choose between prejudicing either of these rights." *Price,* at 814. At the time Greene's counsel learned of the written statement on October 15, at least 6 days remained in the speedy trial period. In granting the "motion to investigate," the trial court noted that counsel would have 2 days free that he otherwise would have spent in trial. In addition, counsel gained access to Greene's medical records almost immediately, and the trial court authorized the expenditure of funds for an additional investigator.

When the proceedings resumed on October 22, Greene's investigator testified that she had spoken with a number of medical persons, but had not yet completed the investigation. Counsel did not inform the court about what he himself had done in the interim, except to state repeatedly that he was not yet ready. No further factual basis for these conclusions was presented. Finally, the judge reviewed the medical records and could find no basis for defense counsel's assertion that it was necessary to interview virtually everyone who had any contact with Greene at the hospital before counsel would be ready to proceed with the CrR 3.5 hearing.

When these circumstances are viewed in conjunction with the substance of the statement, which was exculpatory, we agree that Greene failed to carry his burden of demonstrating by a preponderance of the evidence that he was compelled to choose between prejudicing his speedy trial right or his right to effective assistance of counsel. *See Price,* at 814. Consequently, the trial court did not err in refusing to dismiss on October 22.

Because the motion to dismiss was properly denied on October 22, Greene's request on that date for a continuance tolled the CrR 3.3 speedy trial clock. As Greene then waived his speedy trial rights through November 20, we need not address the parties' arguments about precisely when trial began for purposes of CrR 3.3. Greene concedes that trial began no later than November 18.

The judgment is affirmed.

COLEMAN and WEBSTER, JJ., concur.