[No. 19421–6–I.   Division One.   December 30, 1988.]

THE STATE OF WASHINGTON, *Appellant*, v. CHRISTOPHER
EDWARD CLARK, *Respondent*.

*David S. McEachran, Prosecuting Attorney,* and *David
C. Cottingham, Deputy,* for appellant.

*Dennis Benjamin* of *Washington Appellate Defender
Association,* for respondent.

SCHOLFIELD, C.J.—The State appeals the dismissal of its indecent liberties action against Christopher Clark. We reverse and remand for trial.

## FACTS

Clark babysat 4–year–old D.M. on one occasion. Subsequently, the child's behavior changed. She began having stomachaches and headaches. Where she had previously been eager to learn, she became withdrawn and apathetic. She began to have nightmares involving crying. She would yell at her mother, Trudy, if she attempted to console her. She lost her desire to play with other children and said she wished she was dead and wanted to kill herself.

On February 17, 1986, D.M. told her mother that she had a "secret." D.M. explained that Clark had played two "bad games" with her. In the first game, Clark had sucked on her private parts. Trudy asked her to show where this occurred, and D.M. indicated between her legs. D.M. would not discuss the second game, saying that it was a secret. While she was explaining her secret to her mother, her father remained in another room overhearing part of what was said. Investigation followed, involving a call to Child Protective Services and the Whatcom County Sheriff's Office.

On February 20, 1986, Trudy and D.M. were interviewed by Detective Gitts with the Whatcom County Sheriff's Office and Nancy Dire of Child Protective Services. In the interview, D.M. indicated that Clark "'did bad things, he played a bad game.'" She described an incident wherein Clark had D.M. sit unclothed on his face, putting her "private parts" onto his mouth. She indicated that "'Chris then blew on it.'" D.M. then indicated that Clark played another bad game with her, but she became withdrawn when asked what kind of game it was. She next described a second event similar to the first. She finally indicated that Clark had told her that what he had done was a secret and that she would get in trouble if she told anyone what had happened. She indicated that nobody else had ever touched her the way that Clark touched her.

On February 25, 1986, Clark was charged with indecent liberties. On April 3, 1986, an interview was held at the prosecutor's office. Present at that interview was D.M., her mother, a therapist provided by the State to prepare her for trial, the prosecuting attorney, David C. Cottingham, and defense counsel, Jill S. Bernstein. D.M. refused to give a statement during this pretrial interview.

Clark then moved to depose D.M. An interview was scheduled subsequent to the court ordering a recorded deposition. The deposition occurred on April 24, 1986. During that interview, D.M. was reluctant to speak with defense counsel. She did gesture and identify persons she had drawn in a picture for her therapist. The picture showed Clark and D.M. It also showed other individuals and D.M.'s bed. She indicated that she had told her therapist what had happened to her. She indicated that she did not want to talk about something that happened to her, stating, "I'm not going to say the words" and "I'm not telling all of it."

On April 29, 1986, the State filed its notice of intent to use hearsay statements under RCW 9A.44.120.

On April 30, 1986, Clark moved for dismissal, and the State moved for a continuance to allow an additional interview. The court granted a continuance in order for the parties to obtain one more opportunity to interview D.M. The court promised dismissal if the child again refused to describe the event to defense counsel.

On May 9, 1986, an interview was held. D.M. again refused to provide a statement or to be interviewed.

On May 13, 1986, the State filed a motion for hearing on D.M.'s competency to testify in court. Trial was set for May 15. On May 14, 1986, the trial court heard the motion to dismiss and the motion for a continuance to provide additional time to have a competency hearing. By order filed October 9, 1986, the trial court dismissed the case. The court found that there was no other opening in the trial calendar before the end of the speedy trial period. The

court concluded that the testimony of the complaining witness, D.M., was material to the preparation of the defense and that a summary of D.M.'s statements would not be adequate to allow Clark to prepare for trial. The court further concluded that the State had failed to show good cause for a continuance and that to have held a trial on the merits on May 15, 1986, would have denied Clark's right to adequate preparation for trial, resulting in a violation of his right to due process under the law. This appeal timely followed.

## Failure To Properly Assign Error

The first issue is whether under RAP 10.3, this court may consider the State's argument absent proper assignments of error.

Appellate courts will only review a claimed error if it is included in an assignment of error, or clearly disclosed in the associated issue pertaining thereto, and supported by argument and citation to legal authority. *BC Tire Corp. v. GTE Directories Corp.,* 46 Wn. App. 351, 355, 730 P.2d 726 (1986), *review denied,* 108 Wn.2d 1013 (1987); RAP 10.3(a)(5), 10.3(g).

In the present case, the State has failed to set forth in its brief assignments of error as required by RAP 10.3. While the rules on appeal have not been strictly followed here insofar as assignments of error are concerned, nevertheless, the manner in which the claimed errors are set forth and described in headings throughout the brief is adequate to tell us what actions are asserted as error. Clark should have had no difficulty in responding directly to the issues raised. Failure to properly assign error was not prejudicial to appellate review. Accordingly, we have elected to hear the case on its merits.[1]

---

[1]State's counsel should note that rules on appeal are to be followed and that the Court of Appeals is not required to decide an appeal on its merits where the rules on appeal are not complied with.

PROPRIETY OF DISMISSAL

The State argues that the trial court erred when it failed to grant a continuance, order a hearing to determine the competency of the child witness, and also to determine the admissibility of the child hearsay under RCW 9A.44.120. Clark argues that given the lack of success of the other sanctions under CrR 4.7 for failure to provide discovery, and the fact that the trial could not be reset within the speedy trial period, the court did not abuse its discretion in dismissing the case.

CrR 4.7(h)(7)(i) reads as follows:

> [I]f at any time during the course of the proceedings it is brought to the attention of the court that a party has failed to comply with an applicable discovery rule or an order issued pursuant thereto, the court may order such party to permit the discovery of material and information not previously disclosed, grant a continuance, dismiss the action or enter such other order as it deems just under the circumstances.

The sanctions available to the court for failure to comply with CrR 4.7 include an order compelling discovery, a continuance or dismissal of the action. *State v. Laureano,* 101 Wn.2d 745, 762, 682 P.2d 889 (1984). The purpose of CrR 4.7 is to protect against surprise, which might prejudice the defense. *State v. Bradfield,* 29 Wn. App. 679, 682, 630 P.2d 494 (1981). The defendant's right to compulsory process includes the right to interview witnesses who are necessary to his defense prior to trial. *State v. Burri,* 87 Wn.2d 175, 181, 550 P.2d 507 (1976).

■ The trial court erred in dismissing the case under CrR 4.7(h)(7)(i) on grounds that D.M. refused to give a statement during pretrial interviews. Defense counsel was given three pretrial interviews with D.M. The right to interview a witness does not mean that there is a right to have a successful interview. This is not a case where the State interfered with the interview, nor is it a case where a key witness arbitrarily refused to talk to defense counsel. Rather, this is a case where the difficulties in the interview

were largely unavoidable. A 4–year–old girl was extremely reluctant to discuss the details of sexual abuse. We are satisfied that there was not a failure to provide discovery or compulsory attendance of witnesses and that the circumstances involved here did not justify the dismissal.

The speedy trial rule[2] does not add support to the dismissal. While it may often be preferable to conduct competency hearings or child hearsay hearings prior to the commencement of a trial, there is no prohibition against conducting these hearings after the trial has been commenced. In fact, competency hearings are often conducted after the trial has been commenced and the child is offered as a witness. The same is true of hearings under the child hearsay statute.

We are also satisfied that the trial court erred in entering a dismissal without first holding a hearing to determine the competency of D.M. as a witness and also to determine the reliability of her testimony in the event it was offered under the child hearsay statute, RCW 9A.44.120.

RCW 9A.44.120 provides in relevant part:

A statement made by a child when under the age of ten describing any act of sexual contact performed with or on the child by another, not otherwise admissible by statute or court rule, is admissible in evidence in dependency proceedings under Title 13 RCW and criminal proceedings in the courts of the state of Washington if:

(1) The court finds, in a hearing conducted outside the presence of the jury, that the time, content, and circumstances of the statement provide sufficient indicia of reliability; and

(2) The child either:

(a) Testifies at the proceedings; or

(b) Is unavailable as a witness: *Provided,* That when the child is unavailable as a witness, such statement may

---

[2]The speedy trial rule, CrR 3.3(c)(1), provides in part as follows: "A defendant released from jail whether or not subjected to conditions of release pending trial shall be brought to trial not later than 90 days after the date of arraignment." A criminal charge not brought to trial within the time period provided by this rule shall be dismissed with prejudice. CrR 3.3(i).

be admitted only if there is corroborative evidence of the act.

The statute requires a preliminary determination "that the time, content, and circumstances of the statement provide sufficient indicia of reliability . . ." before statements are admissible under RCW 9A.44.120(1). *State v. Ryan*, 103 Wn.2d 165, 170, 691 P.2d 197 (1984). Compliance with RCW 9A.44.120 mandates, without exception, a hearing to address the question of reliability of the hearsay statements even where the child testifies at trial. *State v. Sammons*, 47 Wn. App. 762, 765, 737 P.2d 684 (1987). *Ryan* sets forth a number of factors which are significant in making this determination. *State v. Ryan, supra* at 175–76.

Competency is a matter to be determined by the trial court within the framework of RCW 5.60.050. *State v. Froehlich*, 96 Wn.2d 301, 304, 635 P.2d 127 (1981). Guidelines for the trial court in reaching its determination presume that the court has examined the child, observed his manner, intelligence, and memory. *Laudermilk v. Carpenter*, 78 Wn.2d 92, 102, 457 P.2d 1004, 469 P.2d 547 (1969). Whenever a child under 10 years old is offered as a witness, the court must assume the initiative in determining his competency. Stafford, *The Child as a Witness*, 37 Wash. L. Rev. 303, 311–12 (1962).

The fact that a child victim of a sex crime is incompetent to testify does not render the declarant's statements unreliable as a matter of law. *State v. Hunt*, 48 Wn. App. 840, 845, 741 P.2d 566 (1987) (citing *State v. John Doe*, 105 Wn.2d 889, 896, 719 P.2d 554 (1986)). Similarly, testimonial incompetence of a child hearsay declarant at the time of the statement would not necessarily render the declarant's statements unreliable. *State v. Hunt, supra* at 846.

In the present case, the State filed a notice of intent to use hearsay. During the hearing on the motion to dismiss, the trial court stated, "I wouldn't allow hearsay to come in through third party testimony to support the cause". In its conclusions of law, the trial court stated that based upon the record before the court, hearsay would not have been

admissible. The State made no objection to the trial court's failure to conduct a hearing on the admissibility of the hearsay. Nevertheless, even in absence of a specific objection, we find that the notice of intent to use hearsay was sufficient to apprise the trial court of its statutory duty to conduct a hearing.

The trial court erroneously based its decision to disallow the hearsay on the pretrial interview. The proper procedure would have been to conduct a hearing to determine the admissibility of the hearsay under RCW 9A.44.120. Such determination would have included a determination of whether D.M. was competent (if she was competent, she would have had to take the stand) and whether there was sufficient indicia of reliability surrounding D.M.'s out-of-court statements to admit them as evidence. *State v. Ryan, supra* at 172–74. If found incompetent, her hearsay may still have been admissible if the circumstances provided sufficient indicia of reliability. *State v. Hunt, supra* at 846. If her hearsay was inadmissible and she was incompetent as a witness, then the court could have entertained a motion for dismissal based upon insufficient evidence.

Accordingly, we find that the trial court erred in failing to hold a hearing to determine competency and to determine the admissibility of the hearsay and in dismissing the case under CrR 4.7(h)(7)(i) for failure of discovery.

We therefore reverse and remand to the trial court for further proceedings consistent with this opinion.

COLEMAN and GROSSE, JJ., concur.

Reconsideration denied February 10, 1989.

Review denied at 112 Wn.2d 1018 (1989).