[No. 25660-2-I.   Division One.   December 7, 1992.]

THE STATE OF WASHINGTON, *Respondent,* v. LARRY DEL SMITH, *Appellant.*

*Suzanne Lee Elliott* of *Washington Appellate Defender Association,* for appellant.

*Norm Maleng, Prosecuting Attorney,* and *Michael Shaw, Deputy,* for respondent.

GROSSE, C.J. — Larry Del Smith appeals his conviction for delivery of cocaine. In response, the State has moved to take new evidence on review. A commissioner of this court referred the matter to the panel for accelerated review pursuant to RAP 18.12. We affirm.

Officers Liggins and Saucier of the Seattle Police Department testified that at approximately 1:15 a.m. on Septem-

ber 14, 1988, they participated in an undercover drug operation. As they drove toward an area of reported drug activity, they saw several young men standing together. They contacted one man, later identified as Reed, Smith's codefendant. Saucier asked Reed if he had a "20", which was street parlance for $20 worth of cocaine. Another man, Smith, approached the car and showed what looked like rock cocaine in his hand. Saucier gave Smith a marked $20 bill for the rock; Smith and Reed then left but were arrested by another team of officers. Smith was charged with delivery of cocaine. The police recorded these events in an incident report.

Trial was originally scheduled for April 13, 1989; however, Smith failed to appear. Trial was rescheduled for July 28, 1989. In June the trial court entered an order on omnibus hearing, ordering the State "to provide police followup reports, if any, by 2 weeks before trial." On July 28, 1989, trial was continued to August 28, 1989, because "officer has not provided discovery and counsel has vacation 8-21 to 8-25." Smith signed an order agreeing to extend the speedy trial period to September 11, 1989.

Prior to the trial date, the prosecutor provided defense counsel with the incident report and a police statement written by Officer Keefe, who had arrested another man during the same incident, at the same location. Keefe's statement, bearing the case number for Smith, identifies the suspect only as Johnson. The report states that the suspect was standing around the area with other people when Officer Saucier made the cocaine buy. Keefe searched Johnson and found $131 and a small quantity of suspected marijuana in his pocket. In Johnson's groin area, Keefe found a baggie containing suspected rock cocaine. At the end of the statement is the following sentence: "Suspect Johnson's information and the evidence seized was inadvertently left off the major report so I typed up the followup with the same SPD case number including the rest of the information." Also before trial, the defense had been provided a lab report also bearing Smith's case number. The

report, by a Ms. Holler, stated that material in a plastic bag consisted of cocaine weighing .1 gram.

On September 11, 1989, the date set for trial, defense counsel reported to the trial court that moments before, the prosecutor had handed her a followup police report by Officer Keefe, dated September 14, 1988, and an additional lab report dated August 10, 1989, signed by Edward Suzuki, forensic scientist. The followup report identified Johnson as "Suspect #3" and gave his address. This report stated that Johnson was arrested in the same area while police were arresting "Suspects #1 & #2".

The new lab report listed an envelope containing .15 grams of cocaine and another envelope containing a baggie of marijuana and a baggie of cocaine. The prosecutor explained that he asked for a new lab report when he discovered that Ms. Holler, the scientist who performed the first test, had left the area and thus was not available to testify.

The record reveals no explanation by the State for the delay in providing the followup report. As to the month-old lab report, the prosecutor stated to the trial court only that he had received it that day.

Contending that late receipt of these documents was a violation of the omnibus order, the defense moved to dismiss. Counsel argued that the new information destroyed the defense theory of the case embodied in its trial memorandum. Defense counsel stated to the trial court that it had believed Keefe would testify that "a third person was the person who sold the narcotics to Officer Saucier and not Mr. Smith." The defense also argued that it had based its defense on the lab report regarding an envelope with only one baggie of cocaine weighing .1 gram. Thus, defense counsel argued, because of late discovery on the last day of the speedy trial period, Smith was forced to choose between prejudicing either his right to a speedy trial or his right to an opportunity for an adequately prepared defense.

The prosecutor and the trial court both noted that the defense had at least some notice of the marijuana, which was listed in the evidence sheet, and of Johnson's involve-

ment in the case as mentioned in Keefe's first report. The defense responded that it had concluded from these facts and from an investigator's interview with Keefe that somehow the police had mishandled the evidence and had confused two separate incidents under the same case number. According to this theory, Officer Keefe actually arrested someone named Johnson but mistakenly gave Smith's case the same number as Johnson's.

The trial court denied the defense motion to dismiss on September 11 and a renewed motion on September 12. At the end of argument on September 12, the trial judge sent the parties to the presiding department, apparently to continue the trial date. On September 12, the court entered an order continuing the trial date to September 26 because: "State provided discovery during trial which had not been provided earlier which is material and which defense is not prepared to respond to."

Trial finally began on January 2, 1990, before a different judge. Again Smith moved to dismiss the case, repeating his argument regarding the discovery violation. The trial court denied the motion, concluding there was no prejudice to Smith. Smith was convicted by the jury as charged.

■ ■ CrR 4.7(h)(7)(i) provides that the trial court may grant a continuance, dismiss the action, or enter another appropriate order as a sanction for failure to comply with a discovery order. The purpose of the rule is to protect against surprise that might prejudice the defense. *State v. Clark*, 53 Wn. App. 120, 124, 765 P.2d 916 (1988), *review denied*, 112 Wn.2d 1018 (1989). The trial court's decision in dealing with violations of a discovery order is discretionary. *State v. Bradfield*, 29 Wn. App. 679, 630 P.2d 494, *review denied*, 96 Wn.2d 1018 (1981). "[T]he question of whether dismissal is an appropriate remedy is a fact-specific determination that must be resolved on a case-by-case basis." *State v. Sherman*, 59 Wn. App. 763, 770-71, 801 P.2d 274 (1990). The court's power to dismiss is reviewable only for a manifest abuse of discretion. *State v. Laureano*, 101 Wn.2d 745, 762, 682 P.2d 889 (1984), *overruled on other grounds in State v. Brown*,

111 Wn.2d 124, 761 P.2d 588 (1988). However, dismissal for violation of discovery procedures is an extraordinary remedy. *State v. Laureano, supra.* The court rules clearly allow the trial court to grant a continuance "when required in the administration of justice and the defendant will not be substantially prejudiced in the presentation of the defense." CrR 3.3(h)(2); *State v. Guloy,* 104 Wn.2d 412, 428, 705 P.2d 1182 (1985), *cert. denied,* 475 U.S. 1020, 89 L. Ed. 2d 321, 106 S. Ct. 1208 (1986).

Smith argues the trial court erred in denying his motion to dismiss. He relies on the following language in *State v. Price,* 94 Wn.2d 810, 620 P.2d 994 (1980):

> We agree that if the State inexcusably fails to act with due diligence, and material facts are thereby not disclosed to defendant until shortly before a crucial stage in the litigation process, it is possible either a defendant's right to a speedy trial, or his right to be represented by counsel who has had sufficient opportunity to adequately prepare a material part of his defense, may be impermissibly prejudiced. Such unexcused conduct by the State cannot force a defendant to choose between these rights. The defendant, however, must prove by a preponderance of the evidence that interjection of new facts into the case when the State has not acted with due diligence will compel him to choose between prejudicing either of these rights.

*Price,* at 814. Smith thus contends he was impermissibly forced to choose between prejudicing either his right to a speedy trial or his right to counsel who had sufficient opportunity to prepare his defense. The State argues there was no error, but has also moved in this court to allow the taking of additional evidence that purportedly shows the late discovery caused Smith no prejudice in preparing his defense.

We reject Smith's contention that the trial court erred in denying his motion to dismiss. We do not read *State v. Price, supra,* as altering the rule that the trial court's decision regarding the remedy for violation of discovery is discretionary. *State v. Bradfield, supra.* The language in *Price,* relied upon by Smith, is permissive and conditional. The court there recognized that as a result of late discovery one

of the defendant's rights "*may* be *impermissibly* prejudiced." (Italics ours.) *Price*, at 814. We do not interpret this language to require dismissal in every instance where untimely discovery by the State affects the defendant's ability to prepare the defense within the speedy trial period.

Accordingly, we also reject the apparent premise of the dissenting opinion that *Price* established a per se rule of dismissal in such cases. In a subsequent case, *State v. Guloy*, *supra*, the Supreme Court again addressed a situation involving a conflict between the right to a speedy trial and the right to an adequate opportunity to prepare a defense. In *Guloy*, the trial date for two codefendants was July 30. Two days before trial the State released the names of six additional witnesses it planned to call at trial. One defendant sought a continuance which the other defendant opposed. The court was faced with having to deny either the right of one defendant to a speedy trial or the other defendant's right to an adequate opportunity to prepare his defense. The trial court compromised by continuing the trial 1 day beyond the speedy trial period. The Supreme Court held that a continuance was proper pursuant to CrR 3.3(h)(2)[1] "when the administration of justice requires it and a defendant will not be *substantially* prejudiced in the presentation of his defense." *Guloy*, at 428. We note again, as we did in *State v. Greene*, 49 Wn. App. 49, 57 n.4, 742 P.2d 152 (1987) that *Guloy* does not cite *Price* or discuss the criteria of due diligence by the State or injection of new material facts into the case. In summary, we conclude that the rule in *Price* is not an absolute bar to granting a continuance beyond the speedy trial period to enable the defense to address new discovery.[2]

---

[1]CrR 3.3(h)(2) provides:

"On motion of the State, the court or a party, the court may continue the case when required in the administration of justice and the defendant will not be substantially prejudiced in the presentation of the defense. The motion must be filed on or before the date set for trial or the last day of any continuance or extension granted pursuant to this rule. The court must state on the record or in writing the reasons for the continuance."

[2]In addition to *Price*, the dissenting opinion relies heavily on *State v. Sherman*, 59 Wn. App. 763, 801 P.2d 274 (1990). In that case, this court merely held

■ In this case the trial court did not abuse its discretion in resolving the discovery issue. First, we note that the record does not clearly demonstrate why the discovery was late. Smith had the burden of showing by a preponderance of the evidence that the State's lack of diligence resulted in the interjection of new material facts into the case. *Price*, at 814. The transcript reveals that there was no real exploration of why discovery was late. Smith merely argued he was unprepared to proceed in light of the new documents. The trial court made no findings with regard to the State's diligence.[3]

Applying the rule in *Price*, we hold that Smith has not shown the late discovery "impermissibly prejudiced" the preparation of his defense. Indeed, we are not convinced that in this case the late documents posed a problem to the defense sufficient to warrant a continuance. The only *new* evidence in the followup report was the address and telephone number of the suspect Johnson. Officer Keefe's state-

---

that the trial court did not abuse its discretion in dismissing the case where there were numerous instances of the State's mismanagement of the case in addition to its total failure to produce certain documents as ordered. This court noted that "[w]hen the defendant is forced to abridge his or her speedy trial right in order to obtain discovery necessary to prepare his or her defense, we believe that the trial court *may* properly exercise its discretion by granting dismissal." (Italics ours.) *Sherman*, at 771 n.3. We do not disagree. In fact, we adhere to the *Sherman* court's statement that "the question of whether dismissal is an appropriate remedy is a fact-specific determination that must be resolved on a case-by-case basis." *Sherman*, at 770-71. We do not view *Sherman* as establishing an absolute rule requiring dismissal in such cases.

We do, however, disagree with one aspect of the *Sherman* analysis. The dissent quotes a passage from *Sherman* stating that a defendant should not be "asked to choose between two *constitutional rights* in order to accommodate the State's lack of diligence." (Italics ours.) *Sherman*, at 770. We believe that this statement confuses the speedy trial rule, CrR 3.3, with the constitutional right to a speedy trial. The Supreme Court in *Price*, at 813-14, clearly limited its analysis to the speedy trial rule under CrR 3.3. A violation of the court rule does not necessarily result in a constitutional violation. *State v. Fladebo*, 113 Wn.2d 388, 393, 779 P.2d 707 (1989). Smith has not argued a violation of the constitutional right, and we reject any suggestion that this right is at issue here.

[3]In a similar vein, we also reject the dissenting opinion's statement that " 'governmental misconduct' occurred here". Dissent, at footnote 4. No argument or finding about misconduct was made below.

ment, which was timely provided to the defense, disclosed the fact that Johnson had been arrested at the same time as Smith; that a search had disclosed a baggie of suspected marijuana and a baggie containing suspected rock cocaine; and that these had been placed in a separate sealed evidence bag. There is nothing in the tardily disclosed followup report that is inconsistent with those facts. We are at a loss to explain how, in the face of Keefe's statement, defense counsel could develop the defense strategy she argued was upset by the late disclosure. That defense is simply unsupported in the record. Furthermore, there has been no showing that Smith could not have dealt with the "new" information by attempting to contact Johnson on the first day of trial or that evening, the remedy that the trial court suggested when the new materials were first proffered to the defense. Nor has Smith shown that defense counsel could not have interviewed Officer Keefe or consulted with Smith during the same timeframe if she believed it necessary.

The new lab report, at most, upset the defense theory challenging the State's chain of evidence. Here again, the officers' first report and "statement" disclose that two evidence bags were involved in this case; one for Smith containing one piece of suspected rock cocaine, and one for Johnson containing both marijuana and rock cocaine. The second lab report only confirms those facts. The production of potentially incriminating evidence does not necessarily result in unfair or unjust prejudice to the defense. *State v. Day*, 51 Wn. App. 544, 550, 754 P.2d 1021, *review denied*, 111 Wn.2d 1016 (1988). The mere fact that the alleged discrepancies in the chain of evidence were explained by the new reports does not show that Smith was *unfairly* prejudiced.

In summary, the "new" information did not constitute new evidence of guilt or deprive Smith of any defense. It merely eliminated his erroneous and uninvestigated assumption that the officers had confused the cases. Even assuming, arguendo, that Smith needed additional time to meet the new discovery, we hold that a continuance beyond the speedy trial period was permissible under *Guloy* and *Price*. Under

all the circumstances of this case, the trial court's denial of the motion to dismiss was not a manifest abuse of discretion.

Pursuant to RAP 9.11, the State has moved in this court to take additional evidence on review which allegedly demonstrates Smith was not prejudiced by the late discovery regarding Johnson. In view of our holding here, this relief is not necessary. Accordingly, we deny the State's motion to take additional evidence and affirm the trial court decision.

Affirmed.

FORREST, J., concurs.

KENNEDY, J. (dissenting) — I respectfully dissent.

### SUPPLEMENTAL STATEMENT OF FACTS

On September 11, 1989, shortly after 3 p.m., Smith's case was assigned for trial before the Honorable Arthur Piehler, judge of the King County Superior Court. Smith had previously signed an order extending the speedy trial expiration date to September 11, 1989. Smith's defense counsel was Ms. Olson. Moments before Ms. Olson entered the courtroom, the prosecutor assigned to the case handed her a year-old followup police report and a month-old laboratory report. These documents had not previously been produced by the State. The discovery order in the case required the prosecutor to provide all such reports by 2 weeks before trial. The record contains no explanation of why these two reports were not provided to the defense until moments before the trial was due to commence.[4]

Ms. Olson immediately recognized that these two reports were both material and "horribly" prejudicial to her planned defense. Based on the discovery earlier provided by the State, and based on a defense investigator's pretrial interview of

---

[4]Whether the State's failure to timely provide the reports was deliberate or by reason of simple mismanagement is irrelevant. In either event "governmental misconduct" occurred here, which was sufficient to warrant a dismissal under CrR 8.3(b). *See State v. Dailey*, 93 Wn.2d 454, 457, 610 P.2d 357 (1980); *State v. Sherman*, 59 Wn. App. 763, 768, 801 P.2d 274 (1990).

one Officer Keefe, Ms. Olson believed that she could establish that, although Officer Keefe mistakenly believed that Smith had given the bogus name of Johnson at the time of his arrest, Keefe had actually arrested a man named Johnson and mixed up Johnson's cocaine with Smith's cocaine — by mistakenly assigning Smith's incident number to the drugs taken from Johnson.

The year-old followup police report confirmed Ms. Olson's theory that there really was a suspect by the name of Johnson, that is, that Johnson was a distinct individual from Smith. The followup report contained an address and a telephone number for Johnson — none of the earlier reports had contained that information. Ms. Olson recognized that she needed to locate and interview Johnson in order to test out the defense theory. The new, month-old laboratory report caused Ms. Olson the greatest concern. It seemed to explain away the apparent flaws in the State's chain of evidence. Moreover, the new lab report raised new chain of evidence issues that the defense had not previously explored. Ms. Olson also recognized that the followup police report necessitated a followup interview with Officer Keefe. Ms. Olson was concerned that Officer Keefe may have discovered that Smith and Johnson were not the same individual after all. Ms. Olson had subpoenaed Officer Keefe in the expectation that he would testify that Smith and Johnson were the same individual.

Mr. Smith had some trouble finding the courtroom that day. He did not arrive until approximately 3:30 p.m. Court was convened at 3:30 p.m. Thus, Ms. Olson had no opportunity to discuss the newly produced police and laboratory reports with her client.

In preparing for trial, Ms. Olson had based Smith's whole defense on the pretrial discovery. That discovery appeared to be consistent with the defense theory of a mixup between Smith and Johnson and between the physical evidence taken from those two individuals. The newly produced, year-old followup police report and the new, month-old lab report caused Ms. Olson to conclude that the defense theory was

either fatally flawed or substantially undermined. Ms. Olson explained her dilemma to Judge Piehler and moved to dismiss based on *State v. Price*,[5] stating:

> [W]e are horribly prejudiced by the fact that this discovery is being given to us right now.
>
> I am going to have to take time to talk to Mr. Smith to decide what to do. Our whole defense has been formulated — your Honor, this is incredible. This is a — I have been working here for four years, and I need a minute to — this has totally blown our defense.

To which the court responded:

> THE COURT: We will do some preliminaries and then you will have the whole evening to talk to Mr. Smith.
>
> MS. OLSON: Well, your Honor, will the record reflect our motion under State versus Price to dismiss at this time? We are not prepared to go to trial, this is the last day of speedy trial, I have received —
>
> THE COURT: Well, I take it you know how to get a continuance if you think that is what you need.
>
> MS. OLSON: Your Honor, I believe that will require Mr. Smith to be in the position of either waiving his right to a speedy trial or going to trial unprepared.
>
> THE COURT: Well, that's an election that you are going to have to decide on.

The court then proceeded with other preliminary matters and court was recessed until the following day, September 12, 1989. On that morning, Judge Piehler again called the case. The prosecutor revealed that Officer Keefe was ill and would not be able to appear that day. Defense counsel renewed her motion to dismiss, advising the court that the telephone number for Johnson, which was on the year-old followup police report, was no longer a working number. Thus, Ms. Olson had not been able to interview Johnson. The motion was again denied. The court stated that because Officer Keefe was ill and because the court had only until noon on the following day to finish the trial, the case would have to go back to the presiding department for reassignment or for a continuance. Judge Piehler instructed the defense to notify the presiding judge that he had denied the motion to dismiss.

---

[5] 94 Wn.2d 810, 814, 620 P.2d 994 (1980).

The parties then proceeded to the presiding department, where the Honorable Susan R. Agid entered an order continuing the trial because: "State provided discovery during trial which had not been provided earlier, which is material and which defense is not prepared to respond to."

The case was eventually tried before the Honorable James McCutcheon, commencing January 2, 1990. Judge McCutcheon, although disinclined to review the merits of Judge Piehler's ruling denying dismissal, allowed the defense to renew the motion in order to supplement and preserve the record as to whether Smith had proved by a preponderance of the evidence that the State's lack of diligence with regard to discovery had forced him to choose between his right to a speedy trial and his right to be represented by adequately prepared counsel. *See State v. Price*, 94 Wn.2d at 814. Judge McCutcheon then ruled that the State's delayed production of the discovery documents had not prejudiced Smith.[6]

Following the trial, Smith was convicted. This appeal followed.

## Discussion

### I

The State has filed a motion in connection with this appeal requesting the opportunity to present new evidence that, following the continuance granted by Judge Agid, the defense interviewed Johnson and decided not to call him, as his testimony would not have been helpful to the defense. The motion should be denied because that evidence is entirely irrelevant to the issue on appeal. The issue here is whether the State's lack of diligence in timely providing the discovery which had been ordered at the omnibus hearing placed Smith in the position of having to choose between his CrR 3.3 speedy trial right and his right to be represented by adequately prepared counsel. That issue must be viewed as of

---

[6]This ruling appears to be in direct contradiction to Judge Agid's determination, on September 12, 1989, that the belated discovery was "material" and that the defense was "not prepared to respond". It is per se "prejudicial" to force a defendant to choose between his right to a speedy trial under CrR 3.3 and his constitutional right to be represented by adequately prepared counsel. It is not necessary for the defendant to demonstrate some additional prejudice.

the date the State finally provided the belated discovery, on the speedy trial expiration date, September 11, 1989. At that point, the defense had no way of knowing whether Johnson's testimony would be helpful to Smith or not. The defense attorney had an obligation, once it was confirmed that there really was a Johnson, and that the State had his address, to find out whether Johnson would be helpful or not. The defense attorney also had an obligation to explore the new chain of evidence issues that were raised by the new, month-old lab report. Common sense dictates that we conclude, and the record confirms, that the defense attorney was unable to meet these obligations between 3:30 p.m. on September 11, and the recommencement of trial on the morning of September 12, 1989. Moreover, Officer Keefe's illness and his resulting lack of availability for any immediate followup interview by the defense compounded the problem faced by the defense. It simply was not possible for Smith to receive, on September 11-12, 1989, both his CrR 3.3 speedy trial rights and his constitutional right to be represented by adequately prepared counsel. That Smith eventually went to trial on a similar theory to that which he had originally prepared, and without calling Johnson as a witness, begs the question. The question is whether it was permissible, in view of the State's unexcused lack of diligence in providing material discovery, to force Smith to choose between two conflicting rights — the right to a speedy trial under CrR 3.3 or the right to be represented by adequately prepared counsel. Under *State v. Price*, 94 Wn.2d at 814, a defendant cannot be forced to make that choice. The appropriate remedy is dismissal. *See also State v. Sherman*, 59 Wn. App. 763, 769-70, 801 P.2d 274 (1990).

## II

CrR 4.7(h)(7)(i) places considerable discretion in the trial court to determine an appropriate sanction for a party's failure to comply with an applicable discovery rule or order. However, it is the responsibility of the court to ensure a trial in accordance with CrR 3.3 to each person charged with having committed a crime. CrR 3.3(a). Moreover, CrR 1.1

provides that "[t]hese rules shall not be construed to affect or derogate from the constitutional rights of any defendant."

> The constitutional right to have the assistance of counsel, Art. I, § 22, carries with it a reasonable time for consultation and preparation, and a denial is more than a mere abuse of discretion; it is a denial of due process of law in contravention of Art. I, § 3 of our constitution.

*State v. Hartwig*, 36 Wn.2d 598, 601, 219 P.2d 564 (1950). A defendant is denied his Sixth Amendment right to counsel if the actions of the State deny the defendant's attorney the opportunity to prepare for trial. "Such preparation includes the right to make a full investigation of the facts and law applicable to the case." *State v. Burri*, 87 Wn.2d 175, 180, 550 P.2d 507 (1976).

Here, the State's lack of diligence in providing material information until the waning hours of the speedy trial expiration date left the defendant's attorney unprepared to proceed with the trial. Judge Agid, then serving as the presiding judge, so determined and the State has not assigned error to that ruling.[7]

The trial court's discretion under CrR 4.7(h)(7)(i) must be measured in view of the court's dual responsibility to ensure

---

[7]The majority is not convinced that the late documents posed such a problem to the defense as to warrant a continuance. Majority, at 854-55. I heartily disagree. Furthermore, the record on appeal does not include the proceedings before Judge Agid. Her rulings as to the materiality of the documents are the law of the case and are not properly before this court. Judge McCutcheon's ruling that the appellant was not prejudiced by the late discovery was error in my view. In any event, there is no indication in the record that Judge McCutcheon was aware of Judge Agid's earlier ruling or that he intended to reverse that ruling. Judge McCutcheon was clearly aware of Judge Piehler's earlier ruling and disinclined to reverse it. Judge McCutcheon's ruling was for the primary purpose of preserving the record for this appeal. Finally, because fundamental due process prohibits the State from forcing a defendant to choose between his CrR 3.3 speedy trial right and his constitutional right to be represented by adequately prepared counsel, the burden is on the State to prove *beyond a reasonable doubt* that its failure to timely comply with the discovery rules and order was harmless error, *i.e.*, that the contents of the two reports were not material and required no additional time in order for defense counsel to adequately prepare for trial. The State has not met this burden. *See State v. Sherman*, 59 Wn. App. at 771.

compliance with CrR 3.3 and to ensure a defendant's constitutional right to the *effective* assistance of counsel. Where a defendant is forced, by reason of the State's failure to comply with an applicable discovery rule or order, to choose between those rights, the appropriate remedy is dismissal of the charges. As this court recognized in *State v. Sherman*, 59 Wn. App. at 769-70, the appropriate remedy for discovery problems is not, invariably, a continuance:

> To require [appellant] to request a continuance under these circumstances would be to present [him] with a Hobson's choice: [he] must sacrifice either [his] right to a speedy trial or [his] right to be represented by counsel who had sufficient opportunity to prepare [his] defense. The Supreme Court recognized this problem in *State v. Price*, 94 Wn.2d 810, 814, 620 P.2d 994 (1980):
>
>> We agree that if the State inexcusably fails to act with due diligence, and material facts are thereby not disclosed to defendant until shortly before a crucial stage in the litigation process, it is possible either a defendant's right to a speedy trial, or his right to be represented by counsel who has had sufficient opportunity to adequately prepare a material part of his defense, may be impermissibly prejudiced. *Such unexcused conduct by the State cannot force a defendant to choose between these rights.*
>
> In circumstances such as these, we do not believe a defendant should be asked to choose between two constitutional rights in order to accommodate the State's lack of diligence.

I would reverse and remand for a dismissal because I believe the trial court abused its discretion by forcing Smith to make the Hobson's choice which we and the Supreme Court disapproved in *Sherman* and *Price*.

Review denied at 121 Wn.2d 1019 (1993).